William G. Dryden
Joseph N. Pirtle
Craig R. Yabui
ELAM & BURKE, P.A.
251 E. Front St., Ste. 300
P.O. Box 1539
Boise, Idaho 83701
Telephone: (208) 343-5454
Facsimile: (208) 384-5844
wgd@elamburke.com
jnp@elamburke.com
cry@elamburke.com
Dryden – ISB #2395
Pirtle – ISB #6973
Yabui – ISB #7706

Attorneys for JH Kelly, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JH KELLY, LLC, a Washington limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>TIANWEI NEW ENERGY HOLDINGS CO., LTD., a People's Republic of China company, TAO (MIKE) ZHANG, WEI XIA, SCOTT PAUL, DAYI (SEAN) LIU, AND DOES 1-10,<br><br>Defendants. | CASE NO. 4:13-cv-00368-BLW<br><br>RESPONSE TO DEFENDANT SCOTT PAUL'S MOTION TO DISMISS COMPLAINT (Doc. 6) |

Plaintiff JH Kelly, LLC, by and through its counsel of record, Elam & Burke, P.A., files

this Memorandum in Opposition to Defendant Scott Paul's Motion to Dismiss Complaint

(Doc. 6). Defendant Paul's Motion under Federal Rules of Civil Procedure 12(b)(1) and (6)

should be denied because the circumstances supporting JH Kelly's causes of action are pled with

RESPONSE TO DEFENDANT SCOTT PAUL'S MOTION TO DISMISS COMPLAINT – 1

particularity under Federal Rule of Civil Procedure 9(b) and JH Kelly has standing to assert its claims. Defendant Paul's Motion under Federal Rules of Civil Procedure 12(b)(2), (4) and (5) should also be denied because Defendant Paul is subject to personal jurisdiction in the District of Idaho and he was properly served under Federal Rule of Civil Procedure 4(e).

## STATEMENT OF FACTS

This case relates to the failed polysilicon production plant (the "Project") which was under construction in Pocatello, Idaho. JH Kelly was the general contractor for the Project. (Doc. 1, ¶ 12). Hoku Materials, Inc., was formed as a wholly-owned subsidiary of Hoku Corporation for the purpose of manufacturing polysilicon to be used by Hoku Corporation and for sale to others. (*Id*., ¶ 11). Defendant Tianwei New Energy Holdings Co., Ltd. acquired a controlling interest in Hoku Corporation in September 2009, and by proxy became the owner of Hoku Materials. (*Id*., ¶ 14).

Payments for JH Kelly's construction services began to fall behind. JH Kelly received both verbal and written assurances from Hoku/Tianwei that all required financing for the Project were in place and that delays in payment were the result of approval from Chinese bureaucrats or delays moving money from China. (*Id*., ¶¶ 18-25). JH Kelly relied on the truth of the representations and continued to engage in construction activities at the site. (*Id*., ¶ 32). Payments were never made, and JH Kelly wound down its work on the Project, ultimately departing from the site by March 30, 2012. (*Id*., ¶ 26).

## ARGUMENT

### I.

# THE CIRCUMSTANCES SUPPORTING JH KELLY'S FRAUD AND RICO CLAIMS ARE STATED WITH PARTICULARITY

Defendant Paul argues that JH Kelly's causes of action for fraud and state and federal RICO violations should be dismissed under Rule 12(b)(6) because none of the claims comply with state or federal rules requiring that fraud allegations, including federal RICO claims, be pled with particularity.[1] (Doc. 7, p. 4). To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads sufficient facts to allow for the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. Plausibility is not akin to a "probability requirement," but it does require more than a sheer possibility that a defendant has acted unlawfully. *Id.*

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 972 (9th Cir. 2010). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading is made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether the plaintiff will prevail but whether it "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2008) (citations omitted).

---

[1] It is unclear whether Defendant Paul's Motion under Rule 12(b)(1) and (6) relates to JH Kelly's state RICO claim. (*See* Doc. 7, p. 4, heading "A"). For purposes of this Response, JH Kelly presumes that Defendant Paul's Motion relates to all claims stated in the Complaint.

The Complaint alleges a cause of action for fraud against all defendants, including Defendant Paul, as well as fraud based racketeering claims. Defendant Paul's Motion is therefore governed by Rule 9(b) which provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[2]

> Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to <u>give defendants notice of the particular misconduct</u> … so that they can defend against the charge and not just deny that they have done anything wrong. <u>Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged</u>. A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction.

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009) (emphasis added).

As set out in more detail below, no reasonable claim can be made that the Complaint fails to apprise Defendant Paul of the specific fraud allegations made against him. His Motion under Rule 12(b)(6) should therefore be denied.

**A. The Circumstances Supporting JH Kelly's Fraud Claim are Stated with Particularity.**

"In Idaho, fraud consists of (1) a statement or a representation of fact, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that there be reliance, (6) the hearer's ignorance of the falsity of the statement, (7) reliance by the hearer, (8) justifiable reliance, and (9) resultant injury." *Washington Federal Sav. v. Van Engelen*, 153 Idaho 648, 657, 289 P.3d 20, 29 (2012). Other than the requirements that the defendant must knowingly make a false statement, there is no specific "scienter" requirement for fraud in Idaho.

---

[2] Idaho Rule of Civil Procedure 9(b) is virtually identical.

RESPONSE TO DEFENDANT SCOTT PAUL'S MOTION TO DISMISS COMPLAINT – 4

*See Staff of Idaho Real Estate Comm'n. v. Nordling*, 135 Idaho 630, 635, 22 P.3d 105, 110 (2001).

The Complaint links Defendant Paul to several allegedly false statements relating to Hoku/Tianwei having sufficient funds in place to pay for JH Kelly's work on the Project. Specifically, the Complaint alleges that Defendant Paul acknowledged on multiple occasions in 2011 that payments to JH Kelly were delinquent, that Tianwei had all required financing in place, and that it was strictly a matter of "when, not if," JH Kelly would receive payment. (Doc. 1, ¶ 18). The Complaint also details two specific email communications from Defendant Paul to JH Kelly on November 17 and 23, 2011, respectively, which include direct quotes of statements by Defendant Paul about necessary funds being in place to pay for construction costs for the Project. (*Id.*, ¶¶ 22-23). The Complaint alleges that JH Kelly relied on those representations, as well as the representations of other Defendants, and that the representations were the reason JH Kelly continued working on the Project. (*Id.*, ¶ 32). The Complaint further alleges that the statements regarding the necessary financing to pay JH Kelly were false because no additional payments were made after October 2011.[3] (*Id.*, ¶ 31). The Complaint also alleges damages suffered in Idaho as a result of its reliance on the representations. (*Id.*, ¶ 37.)

In addition to the allegations in the Complaint, this Court may take judicial notice of public documents that are required to be filed and are actually filed with the Securities and Exchange Commission when deciding a motion to dismiss, even if the filings are not cited in the

---

[3] Defendant Paul acknowledges that the funding was not in place, as he describes JH Kelly's claims as arising "out of an eventual failure of Defendant Tianwei to fund completion of the plant construction." (Doc. 7, p. 2). This goes to the falsity of Defendant Paul's statements to JH Kelly about funding being in place to complete the Project.

RESPONSE TO DEFENDANT SCOTT PAUL'S MOTION TO DISMISS COMPLAINT – 5

complaint. *In re Atlas Mining Company, Securities Litigation*, 670 F.Supp.2d 1128, 1139 (D. Idaho 2009) (citing *Dreiling v. American Express. Co.*, 458 F.3d 942, 946 n. 2 (9th Cir. 2006).

JH Kelly respectfully requests that this Court take judicial notice of Hoku Corporation's Form 10-Q filings with the Securities and Exchange Commission for the quarterly periods ending September 30, 2011, and December 31, 2011, which are attached to the Declaration of Joseph N. Pirtle ("Pirtle Declaration," Exhibits A-D). In describing the capital secured by Hoku Corporation in 2011 to pay for construction costs relating to the Project, the Form 10-Q filings state, in relevant part, that "the amount we have secured <u>is not sufficient to complete construction of the Polysilicon Plant</u>." (Pirtle Declaration, Exhibit A, pp. 43, 45; Exhibit C pp. 46, 48) (emphasis added). Moreover, Defendant Paul certified that he reviewed both Form 10-Q filings, that they did not contain any untrue statement of a material fact, and that the financial statements and information within the filings fairly presented the financial condition for the periods covered by the filings. (Pirtle Declaration, Exhibits B and D). Those statements, certified by Defendant Paul, directly contradict Defendant Paul's statements to JH Kelly about having sufficient funds to complete the Project. Moreover, the Form 10-Q for the quarterly period ending September 30, 2011, was certified by Defendant Paul on November 25, 2011 (*Id.*, Exhibit B), just two days after Defendant Paul stated in an email to JH Kelly that "Tianwei has committed to provide the funding we need to build this plant." (Doc. 1, ¶ 23).

The Complaint clearly pleads facts supporting a claim for fraud that is plausible on its face. The Complaint also complies with the heightened pleading requirements of Rule 9(b), as it sets out the particular nature of alleged fraudulent statements by Defendant Paul, and specifically outlines the "who, what, when, where, and how" of the alleged misconduct. Defendant Paul's Motion under Rule 12(b)(6) should therefore be denied.

### B. The Circumstances Supporting JH Kelly's State and Federal RICO Claims are Stated with Particularity.

In order to state a claim for RICO violations under 18 U.S.C. § 1962(c), a plaintiff must plead the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 196 (1985). Though RICO violations are fraud-based claims that must conform to the requirements of Rule 9(b), *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004), "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The Complaint establishes very direct theories of state and federal RICO liability – Defendant Paul, along with the other Defendants, constitute an enterprise, the purpose of which was to induce JH Kelly into continuing working without payment based on false representations of funding being in place to pay for construction services and, as a result, injured JH Kelly's business and property in Idaho. Relative to the damages associated with its state and federal RICO claims, JH Kelly alleges that Defendant Paul's electronic mail communications to JH Kelly on November 17 and 23, 2011, constituted wire fraud as they were made in furtherance of the scheme or artifice to defraud JH Kelly into continuing its work on the Project without payment, and were made with the specific intent to defraud or deceive. (Doc. 1, ¶¶ 45-46 and 59-60). The Complaint alleges that JH Kelly continued its work on the project until early 2012, and that it continued to de-mobilize from the Project through the first quarter of 2012. (*Id.*, ¶¶ 13 and 26). The Complaint also alleges that the Enterprise, which includes Defendant Paul, shared a common purpose to engage in the alleged racketeering activities to defraud JH Kelly into continuing its work on the Project without payment (*Id.*, ¶¶ 50 and 64), and that the Enterprise's

connected patterns of racketeering activity was the but for cause of injury and proximate cause of injury to JH Kelly's business and property in Idaho, and that JH Kelly is entitled to recovery of three (3) times its actual damages proved.[4] (*Id*., ¶ 65).

The Complaint alleges that JH Kelly was directly harmed by the predicate acts of the Enterprise, including Defendant Paul. The allegations supporting JH Kelly's state and federal RICO claims identify the particular nature of the alleged wire fraud supporting the patterns of racketeering activity engaged in by Defendants, including Defendant Paul. Moreover, the predicate acts are stated with specificity, which allegations include the identity of the speaker, the date of the statement, a direct quote of the statement, a description of how the communication was made and to whom the communication was made. This information provides the who, what, when, where, and how of the alleged misconduct, and complies with Rule 9(b).

The circumstances supporting JH Kelly's claims against Defendant Paul are stated with particularity. Defendant Paul's Motion under Rule 12(b)(6) should therefore be denied.

## II.
## JH KELLY HAS STANDING TO PURSUE ITS CLAIMS
## AGAINST DEFENDANT PAUL

Defendant Paul also argues that JH Kelly lacks standing to pursue its fraud and RICO claims. Specifically, Defendant Paul argues that JH Kelly fails to plead causation with particularity and that such failure deprives JH Kelly of standing and this Court of subject matter jurisdictions. (Doc. 6, pp. 5-6, 9).

When a Rule 12(b) motion to dismiss is based on lack of standing, the reviewing court must defer to the plaintiff's factual allegations, and further must "presume that general

---

[4] JH Kelly's state RICO claim alleges damages suffered in Idaho as a result of the Enterprise's connected pattern of racketeering activity. (Doc. 1, ¶ 51).

RESPONSE TO DEFENDANT SCOTT PAUL'S MOTION TO DISMISS COMPLAINT – 8

allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The doctrine of standing is based both on prudential concerns and on constitutional limitations on the jurisdiction of the federal courts." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008). To determine whether a dispute presents a case or controversy sufficient for jurisdiction under Article III of the Constitution, courts apply a three-element test: (1) "the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. (quoting *Lujan*, 504 U.S. at 560-61 (internal quotation marks omitted)).

"To have standing under civil RICO, [a plaintiff] is required to show that the racketeering activity was both a but-for cause and a proximate cause of his injury." *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (citing *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). For RICO purposes, proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged." *See Holmes*, 503 U.S. at 268; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiffs' injuries.").

The causation element of standing requires a plaintiff to show an injury that is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Gibson v. Credit Suisse AG*, 787 F.Supp.2d 1123, 1130 (D. Idaho 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

RESPONSE TO DEFENDANT SCOTT PAUL'S MOTION TO DISMISS COMPLAINT – 9

Although allegations of wire fraud must comply with Rule 9(b), *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986), the statute requires only "(1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with specific intent to defraud, and (3) the use of … interstate wire communications in furtherance of the scheme." *U.S. v. Inzunza*, 638 F.3d 1006, 1017 (9th Cir. 2011). Reliance need not be shown to plead RICO allegations. *Bridge v. Phoeniz Bond & Indem. Co.*, 553 U.S. 639, 641-42 (2008).

JH Kelly clearly has standing to pursue its claims against Defendant Paul. With respect to all claims, the Complaint alleges an injury in fact – injury to JH Kelly's business and property in Idaho based on fraudulent statements, which injury is particular to JH Kelly and actual in that it suffered actual not speculative damages. The Complaint also alleges a causal connection between JH Kelly's claimed injuries and Defendant Paul's conduct. Specifically, the Complaint particularly describes the representations made by Defendant Paul and JH Kelly's reliance on those representations being the reason JH Kelly continued working on the Project. (Doc. 1, ¶ 32). Moreover, it is likely, not speculative, that JH Kelly's claimed injuries will be redressed by a favorable decision.

For the reasons outlined in Section I(B) of this Response, JH Kelly also has standing to assert its RICO claims against Defendant Paul. The Complaint alleges a direct relation between its alleged injury to business and property in Idaho and Defendant Paul's conduct, in addition to the conduct of the other Defendants. Specifically, the Complaint alleges that JH Kelly suffered damages directly related to its reliance on Defendants' fraudulent statements, including Defendant Paul's statements, of having financing in place to complete the Project. Those allegations are stated with particularity, and demonstrate a direct injury to JH Kelly.

This Court has subject matter jurisdiction of this case, and JH Kelly has standing to purpose its claims for fraud and RICO violations. Defendant Paul's Motion based on Rule 12(b)(1) should therefore be denied.

### III.
### THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT PAUL

Defendant Paul argues that JH Kelly's failure to plead causation with particularity establishes that he is not subject to personal jurisdiction in the District of Idaho. (Doc. 7, p. 10). In addition, Defendant Paul argues that his contacts with the District of Idaho are limited solely to his role as an officer and director of Hoku Corporation, and that somehow he is not subject to personal jurisdiction in Idaho because of this. (*Id.*, pp. 11-13.) Defendant Paul also asserts that service of process on him personally was ineffective for the apparent reason that his contacts with Idaho are limited to his capacity as a corporate officer and director for Hoku Corporation. (*Id.*, p. 11.)

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to show that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "Uncontroverted allegations in the plaintiff's complaint must be taken as true." *Id*. A plaintiff's complaint withstands a motion to dismiss when it makes "only a prima facie showing of jurisdictional facts." *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001) (internal citations omitted).

Defendant Paul's personal jurisdiction arguments are predicated on this Court dismissing JH Kelly's federal RICO claim, and the basis for jurisdiction being Idaho's long-arm statute, Idaho Code § 5-514. (Doc. 7, pp. 10-11). "Where there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies."

*Cornelius v. DeLuca*, 709 F.Supp.2d 1003, 1010 (D. Idaho 2010) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Idaho Code § 5-514 outlines the acts subjecting persons to jurisdiction in Idaho. Those acts include "the transaction of business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association or corporation," I.C. § 5-514(a), and "the commission of a tortious act within this state," I.C. § 5-514(b).

The Complaint alleges that Defendant Paul transacted business and committed tortious acts in Idaho. (Doc. 1, ¶ 4; see also Declaration of Mason Evans, Exhibits A-B). JH Kelly also alleges that it suffered injury in Idaho. (*Id.*, ¶¶ 37, 51 and 65). "[A]n allegation that an injury has occurred in Idaho in a tortious manner is sufficient to invoke the tortious act language of I.C. § 5-514(b)." *Blimpka v. My Web Wholesaler, LLC*, 143 Idaho 723, 726, 152 P.3d 594 (2007) (quoting *St. Alphonsus Reg'l Med. Ctr. v. State of Wash.*, 123 Idaho 739, 743, 852 P.2d 491, 495 (1993).

It is also clear that Defendant Paul has sufficient minimum contacts with Idaho such that the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. Specifically, Defendant Paul met with Mason Evans of JH Kelly in Pocatello, Idaho, on September 28, 2010, to discuss timetables and payment for work performed by JH Kelly. (Declaration of Mason Evans, ¶ 3). Defendant Paul also transmitted an email to Mason Evans on November 17, 2011, which states "I just <u>returned to Pocatello</u> after a few weeks of business travel (including a trip to China to kiss the ring), and <u>I am scheduling a meeting with the management team here</u> to discuss all of our outstanding vendor payments." (*Id.*, ¶ 4; Exhibit A)

(emphasis added). That email expressly states that Defendant Paul "returned to Pocatello" and that he was scheduling a meeting "here," indicating that the email communication was sent from Pocatello, Idaho. Thus, Defendant Paul clearly directed his communications to Idaho and made communications from Idaho, all of which relate to the allegations in the Complaint.

Defendant Paul's argument that he is somehow shielded from personal liability based solely on his status as an officer and director of a corporation is not supported under Idaho law. *See L.B. Industries, Inc. v. Smith*, 817 F.2d 69, (9th Cir. 1987) ("It is an established principle of corporations law that corporate directors are not liable merely by virtue of their office for fraud or other tortious wrongdoing committed by the corporation or its officers. … Instead, <u>to be held liable a corporate director must specifically direct, actively participate in, or knowingly acquiesce in the fraud or other wrongdoing of the corporation or its officers</u>.") (citations omitted, emphasis added).

Defendant Paul's Motion is also based on Rules 12(b)(4) and (5). An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service. Technically, therefore, a Rule 12(b)(4) motion is proper only to challenge non-compliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons. Wright and Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1353. A motion under Rule 12(b)(4) is fairly rare. *Id*. A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint. *Id*.

Defendant Paul fails to articulate any argument to support his Motion under Rule 12(b)(4). His Motion should therefore be denied.

Defendant Paul appears to assert an argument under Rule 12(b)(5) when he "maintains that service of process on him for this action was ineffective…." (Doc 7, p. 11). Defendant Paul does not state how service of process was ineffective other than to state that his only contacts with Idaho were in a corporate capacity. (*Id*.) However, Defendant Paul was personally served on August 25, 2013, in a judicial district of the United States by an individual over the age of 18. (Doc. 4.) Such service complies with the requirements of Rule 4(e) and is effective.

## **CONCLUSION**

The Complaint alleges circumstances supporting JH Kelly's claims with particularity. Defendant Paul is clearly apprized of the basis for the claims asserted against him. Defendant Paul's Motion to Dismiss based on Fed. R. Civ. P. 12(b)(1) and (6) should therefore be denied. Moreover, Defendant Paul is clearly subject to personal jurisdiction in the District of Idaho and was personally served with the Summons and the Complaint. This Court should therefore also deny his Motion based on Fed. R. Civ. P. 12(b)(2), (4) and (5).

DATED this 10th day of October, 2013.

                                ELAM & BURKE, P.A.

                                By: /s/Joseph N. Pirtle
                                     Joseph N. Pirtle, of the firm
                                     Attorneys for JH Kelly, LLC

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the ___10th___ day of October, 2013, I filed the foregoingelectronically through the CM/ECF system, which caused the following parties or counselto be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Celeste K Miller
ck@mcdevitt-miller.com, heather@mcdevitt-miller.com

Howard Holderness
hholderness@morganlewis.com, cgreenblatt@morganlewis.com

Thomas A Banducci
tab@andersenbanducci.com, ABLawdocket@gmail.com, ajg@andersenbanducci.com, cme@andersenbanducci.com, dlp@andersenbanducci.com, jkr@andersenbanducci.com, jsd@andersenbanducci.com, kas@andersenbanducci.com, kcr@andersenbanducci.com, mer@andersenbanducci.com, trk@andersenbanducci.com

Notice will be served by U.S. mail to:

Dwight A Healy
1155 Avenue of the Americas
New York, NY 10036-2787

Gayle Argon
1155 Avenue of the Americas
New York, NY 10036-2787

            /s/ Joseph N. Pirtle
            Joseph N. Pirtle