Celeste K. Miller (ISB No. 2590)
Chas. F. McDevitt (ISB No. 835)
Dean J. Miller (ISB No. 1968)
McDEVITT & MILLER LLP
420 West Bannock Street
P.O. Box 2564-83701
Boise, ID 83702
Tel: 208.343.7500
Fax: 208.336.6912
ck@mcdevitt-miller.com
joe@mcdevitt-miller.com
chas@mcdevitt-miller.com

Howard Holderness (CA Bar No. 169814) (admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1740 /415.442.1000
Fax: 415.442.1001
hholderness@morganlewis.com

*Attorneys for Scott Paul*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JH KELLY, LLC a Washington limited liability company,<br><br>Plaintiff,<br>vs.<br><br>TIANWEI NEW ENERGY HOLDINGS CO., LTD., a People's Republic of China company, TAO (MIKE) ZHANG, WEI XIA, SCOTT PAUL, DAYI (SEAN) LIU, AND DOES 1-10,<br><br>Defendants, | Case No. 4:13-cv-00368-BLW<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT SCOTT PAUL'S MOTION TO DISMISS** |

COMES NOW, Scott Paul, Defendant in the captioned action, by and through counsel,

Celeste K. Miller of McDevitt & Miller LLP and Howard Holderness of Morgan, Lewis &

Bockius, LLP, and files this Reply Memorandum in Support of Scott Paul's Motion to Dismiss

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT SCOTT PAUL'S MOTION TO DISMISS—1**

under and pursuant to Fed. R. Civ. P. 9 (b) and 12 (b) (1), (2), (4), (5) and (6) for lack of subject matter jurisdiction, lack of personal jurisdiction (including ineffective service of process) and for failure to state a claim upon which relief can be granted.

## I. Procedural Background

Plaintiff filed the Complaint on August 20, 2013. (Doc. 1). On September 16, 2013, Defendant Scott Paul filed a motion to dismiss the Complaint and a memorandum in support of that motion. (Doc. 6 & 7). On October 4, 2013, defendants Tao (Mike) Zhang and Dayi (Sean) Liu filed a joint motion to dismiss and supporting papers on grounds similarly powerful to those raised by Mr. Paul. (Doc. 15, 16, & 17). On October 10, 2013, Plaintiff filed its papers in opposition to Mr. Paul's motion to dismiss. (Doc. 19).

Mr. Paul replies herein to arguments raised by Plaintiff in its opposition to his motion to dismiss. Mr. Paul incorporates herein points made by Defendants Zhang and Liu in their Memorandum in Support, attached to their Motion to Dismiss (Doc. 15, Attachment #1), as well as certain items the Plaintiff submitted in support of its Response to Motion. Specifically, Mr. Paul incorporates herein the Form 10-Q that he, in his then capacity as Chief Executive Officer for Hoku Corporation, certified to the Securities and Exchange Commission ("SEC") on behalf of Hoku Corporation, for the quarter ending December 2011, and copies of emails that were part of a string of emails that were alleged in the Complaint to have been transmitted between Plaintiff's representatives and Mr. Paul. (Doc. 19, Attachments # 4, 7 and 8). Mr. Paul joins with the Plaintiff's request that the court take judicial notice of these items.[1]

---

[1] Mr. Paul does take exception, however, to Plaintiff's introduction of new facts not alleged in the Complaint but stated in the Declaration of Mason Evans at Paragraph 3 (Doc. 19, Attachment #6).

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT SCOTT PAUL'S MOTION TO DISMISS—2**

II. **Argument**

As a general matter, Plaintiff's aim here is to "transmogrify" a potential breach of contract action between corporate entities into a fraud action against individuals. That effort should fail, and Plaintiff's response to Mr. Paul's motion to dismiss demonstrates why. Rather than point to specific alegations in the Complaint – as it must – that adequately demonstrate compliance with Rule 9 (b)'s requirement to plead fraud and civil RICO claims with particularity as to circumstances giving rise to liability, Plaintiff responds to Mr. Paul's motion by simply standing its ground and repeating the mantras that the Complaint states a claim upon which relief can be granted and that the court does have subject matter jurisdiction over the action and personal jurisdiction over Mr. Paul, individually. The pleading standards here require more than recitation of standards. The pleading standards here require allegations – made subject to Rule 11 – that meet heightened burdens, and Plaintiff has simply failed to meet those burdens.

A. **Plaintiff Lacks Standing to Pursue Fraud and Civil RICO in this Court, Depriving it of Subject Matter Jurisdiction over the Action.**

It is well-settled that a plaintiff must allege direct and proximate cause in order to have standing to sue in fraud and civil RICO in federal court. *Gilbert v. Bank of America Corp.*, Case No. 1:11-cv-00272-BLW, 2012 BL 247871 (D. Idaho Sept. 26, 2012). Standing to sue is a constitutional linch pin to this court's subject matter jurisdiction over the action. U.S. Const. Art. III, § 2; *Luhan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Plaintiff does not dispute these authorities, but it insists – incorrectly – that its Complaint sufficiently alleges causation.

In pleading fraud and RICO, Plaintiff alleged that it suffered losses totaling approximately $25,000,000. The very emails that Plaintiff says caused the loss demonstrate the

absence of causation. Specifically, Plaintiff in its Complaint relies on statements Mr. Paul made in two emails:

1. In a November 17, 2011, 1:51 p.m. email Mr. Paul wrote to Randy Peck and Terry Major of JH Kelly in part that:

> "...it gets harder to move US dollars from China to the U.S. as we approach the end of the year. It's complicated, but basically the banks are each assigned a quota of USD at the beginning of the year... There is just a timing issue."

2. And on November 23, 2011 (one day before Thanksgiving in 2011) Mr. Paul wrote in an email to Mason Evans of JH Kelly, that:

> "... Tianwei has committed to provide the funding we need to build this plant."

The emails upon which Plaintiff's claims against Mr. Paul are allegedly based do not amount to particularized pleading of a direct or "but-for" causation of loss because Plaintiff's own Notice of Lien Claim establishes November 30, 2011, as the last day it worked at the site (seven days after the second "offending" email, with the Thanksgiving holiday intervening).[2] Idaho Rule Civ. Pro. 9 (b), Fed. R. Civ. Pro. 9 (b). In other words, because Mr. Paul's statements could not have resulted in a $25,000,000 loss in three business days, there is no connection between Mr. Paul's statements and Plaintiff's alleged loss.

Plaintiff's response fails to address those pleading inadequacies and actually highlights the lack of any plausible link between Mr. Paul's statements and JH Kelly's losses from the failed Hoku project. Specifically, the email string attached as Exhibits A and B to the Declaration of Mason Evans of JH Kelly (Doc. 19, Attachments 7 and 8) includes a copy of a November 17, 2011, 3:35 p.m. email from Terry Major to Scott Paul, and it includes a forwarded

---

[2] See: *JH Kelly v. Hoku Materials, Inc., et al*, Case No. CV-2012-1123-OC, Bannock County Lien Foreclosure action; Exhibit B to JH Kelly's Complaint is a copy of its Notice and Claim of Lien, Instrument # 21118444, indicating that November 30, 2011 was the last date on which labor and materials were furnished.

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT SCOTT PAUL'S MOTION TO DISMISS—4**

email from Kevin Van Fleet of JH Kelly written at 2:20 p.m. on November 17, 2011, stating in relevant part that:

"Terry,

The delay in payment by HOKU is very concerning. To put it in perspective, **a total of $9,450,498 is overdue on the three projects.** ... Here's a summary:

1. Project 07212. **This is the original project that has been done since July of last year and has an overdue balance of $601,562.01**...

2. Project 11332. This is the project for work packages 04-05-06. **The overdue balance is $6,594,439 with $5,087,266 of that balance overdue by 18 days. For a project that is 98% complete** or more ... **HOKU is seriously behind.**

3. Project 11380. This project is in a better position **with *only* $2,254,498 overdue for a couple days.** However, **HOKU is shutting down the project**, and I would hope that the open balances are paid within terms."(emphasis supplied).

This email establishes that approximately $9,450,498 was past due from Hoku to JH Kelly for work performed in the 16 months prior to mid-November 2011. The email computations do not include amounts owed for work already performed and invoiced but not yet past-due. More fundamentally, however, the email demonstrates that JH Kelly knew, as of the writing, that "HOKU [was] seriously behind," and "HOKU [was] shutting down the project." Thus, there were no more losses from construction work to be incurred by JH Kelly after the allegedly causal emails authored by Mr. Paul. Rather, losses from construction work had already been incurred, were recognized by JH Kelly and had nothing to do with Mr. Paul's emails. At a minimum JH Kelly is required to state with particularity what construction work it did or did not do but for the allegedly false statements that Scott Paul made on November 17 and 23, 2011.

In sum, the Complaint makes no specific mention or inference of any *particular circumstance* of a causal link between Mr. Paul's statements and its claimed losses. Plaintiff's response to the motion to dismiss continues to obfuscate the point. A righteous plaintiff that

suffered a direct and proximate loss of $25,000,000 (with a claim to triple it) would be shouting the circumstances causing it from the rooftops rather than dancing around it as JH Kelly continues to do.³

To be sure, JH Kelly may have a breach of contract claim for work it performed, but it did not rely on false promises of individual fraudfeasors in November 2011 to expend plant construction efforts or funds, and it has not made and cannot make such a case here. JH Kelly, like all creditors in the Hoku company bankruptcies, suffered losses that are recoverable, if at all, in those proceedings. If the conduct alleged here were considered fraudulent, then every bankruptcy debtor who loses a job *after* incurring significant mortgage or credit card debt and files bankruptcy because of an inability to repay the debt would be subject to a fraud claim.

### B. Plaintiff has Insufficiently Alleged Falsity of Statements When They Were Made.

Plaintiff's failure to specifically plead any particular circumstances that demonstrate the falsity of any of the statements he made persists. In addition to the significant requirement that plaintiffs plead direct and proximate causation with specificity, Plaintiff must allege with particularity how the statements it attributes to Mr. Paul were false *when he made them*. *MWI Veterinary Supply Co. v. Wotton*, No. 1:12-cv-00055-BLW, 2012 BL 165603 (D. Idaho July 03, 2012)(Counterclaimant's allegations did not meet exception to the general rule), *citing Gillespie v. Mountain Park Estates*, LLC, 132 P.3d 428, 430 (Idaho 2006). Plaintiff ignores this requirement, and it attempts to demonstrate falsity by quoting one sentence from an 89 page document, that, when read in context, actually establishes the promissory nature of Mr. Paul's statements to JH Kelly at the time he made them and his belief that what he said was true rather than false.

---

³ In its responsive materials JH Kelly appears to have abandoned its claim that a statement that Mr. Paul made to the press in February 2012 provides a causal link to its losses.

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT SCOTT PAUL'S MOTION TO DISMISS—6**

Specifically, Plaintiff relies on Form 10-Q filings made with the SEC by Hoku Corporation for the third and fourth quarters (September and December) of 2011. Mr. Paul certified these filings, and in each of them the company discloses that it had not secured sufficient funding to complete construction of the plant. Plaintiff concludes that this statement proves the falsity of the representation to JH Kelly by Mr. Paul that, "Tianwei has committed to provide the funding we need to build this plant." Fundamentally, there is a simple difference between present and future tenses. Funding secured at one point in time is a different condition than having a commitment from a funding source to provide funds that will be needed to build the plant or even subsequently losing that commitment.

Mr. Paul's statement that the company did not then have funds to complete construction was also wholly consistent with the his email quoted in part above explaining the quotas on US dollars available to Chinese banks near the end of 2011, which circumstance is also mentioned in the subject Forms 10-Q. *See* Declaration of Celeste K. Miller, Exhibit 1, containing all statements in the Hoku Corporation Form 10-Q for the quarter ending December 2011 that are consistent with the Scott Paul emails upon which Plaintiff's claims against him are based.

Moreover, the very purpose of SEC filings should be kept in mind:

> The [Management's Discussion and Analysis of Financial Conditions and Results of Operations] requirements are intended to provide, in one section of a filing, material historical and prospective textual disclosure enabling investors *and other users* to assess the financial condition and results of operations of the registrant, with particular emphasis on the registrant's prospects for the future. . . ." Management's Discussion and Analysis of Financial Condition and Results of Operations; Certain Investment Company Disclosures, SEC Interpretive Release Nos. 33-6835 & 34-26831, 54 Fed. Reg. 22427-01, 22428 (May 24, 1989) (quoting Securities Act Release No. 6349, 23 SEC Docket 962, 964 (Sept. 28, 1981)) (emphasis supplied).

A sophisticated creditor such as JH Kelly (as an "other user") would have constructive notice of all of the disclosures contained in Hoku Corporation's quarterly SEC reports throughout quarters relevant to its work at the site. *See Inamed Corp. v. Medmarc Cas. Ins. Co.,* 258 F.Supp.2d 1117, 1124-25 (C.D. Cal. 2002) ("the Form 10-K, which is publicly available, does provide adequate notice . . . and . . . placed Defendant on constructive notice of the potential liability..."). Plaintiff's use of the SEC filings in opposition to the present motion raises the question of whether JH Kelly was on actual notice in 2011 of the statements made in Hoku Corporation's quarterly SEC filings.

In the end, Mr. Paul stated repeatedly under oath in the subject Form 10-Q's that Tianwei had committed funding to complete plant construction, meet accounts payable (i.e. JH Kelly) and operating expenses at least through March 2012. That was his belief when he signed the Form 10-Q's and that was his belief when he sent emails to JH Kelly in November 2011. Tianwei simply pulled the plug. That is not the basis for fraud as to Mr. Paul. Rather, Mr. Paul, on behalf of Hoku Corporation, made exceedingly candid disclosures of all risks the company faced during its plant construction phase in the subject quarterly 10-Q reports.

One feature of a fraud scheme (that must meet heightened pleading requirements) is evidence of consciousness of guilt. Conduct such as altering documents, shredding them or creating fictitious documents in order to cover up a fraud scheme proves awareness of guilt. The extensive, detailed Hoku Corporation Forms 10-Q that Mr. Paul certified during Hoku's most trying days reflect the exact opposite of consciousness of guilt. Indeed, Plaintiff has alleged no conduct that even hints at a fraud scheme or the types of cover-up that are common in most, if not all, fraud schemes.

## C. Plaintiff's Allegations of Enterprise and Pattern are Insufficient.

Plaintiff's allegations that Mr. Paul and the other defendants constituted a RICO enterprise that engaged in a pattern of racketeering activity cannot withstand dismissal. As Defendants Zhang and Liu argued in their Memorandum in Support (Doc. 15, Attachment 1), these allegations are defective, and Mr. Paul incorporates herein those arguments and authorities. In addition to the lack of distinctiveness among these defendants that is required by controlling authorities, Plaintiff's allegations of a pattern of racketeering activity fall far short of pleading requisite for continuity.

So called "pattern" allegations are either open-ended in continuity (projecting into the future with a threat of repetition) or closed-ended in continuity (must allegedly occur over a "substantial period of time"). In *Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 2010 BL 120881, 4-5 (N.D. Cal. May 28, 2010), the district court dismissed the RICO claims against Dreyer's for lack of distinctiveness among defendants necessary to allege a RICO enterprise. The relationships of the defendants in Dreyer's were identical to the relationships of the defendants in this case (Corporation, subsidiary and employees). The court there found that two alleged instances of wire fraud occurring within 4 months were insufficient allegations of closed-ended continuity. The court there also pointed out that a total of eleven communications over a four month period would be insufficient. Plaintiff's allegations in this case of even fewer instances of wire fraud in a shorter time frame are likewise insufficient to withstand dismissal. *Id.*

### D. The Court Lacks Personal Jurisdiction Over Scott Paul.

Mr. Paul incorporates herein the points and arguments made by Defendants Zhang and Liu regarding lack of personal jurisdiction as they support similar arguments he earlier raised on that issue. Neither the Plaintiff nor any defendant was a resident of Idaho at the time this action was commenced. Plaintiff's allegation that the tortious conduct occurred in Idaho is far from clear.

Mr. Paul's allegedly tortious conduct consisted of two emails authored and sent by him, a Hawaii resident and CEO of a Delaware corporation that was principally based in Hawaii[4], to principals of a Washington corporation, principally based in that state, concerning payment on sums then past-due and owed by a subsidiary company, Hoku Materials, Inc. Plaintiff is not even a creditor of Hoku Corporation.[5]

Plaintiff has not alleged that Mr. Paul's emails upon which their fraud claim and wire fraud RICO predicate acts are based, originated in, transmitted through or were received in Idaho. In the absence of any specific allegation that a single aspect of the tortious conduct in fact even occurred in Idaho, neither the conduct nor its effect should be construed as having been "aimed at" the forum state. *Pavavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998).

### CONCLUSION

Based on the Complaint and the record herein, the foregoing arguments and matters of which the court can take judicial notice, Plaintiff's Complaint against Scott Paul should be dismissed for failure to state a claim upon which relief can be granted, lack of subject matter jurisdiction and for lack of personal jurisdiction over Mr. Paul.

---

[4] Exhibit C to Declaration of Joseph N. Pirtle (Doc. 19, Attachment # 4).
[5] See Schedules, Hoku Corporation, Case No. 13-40837; Hoku Materials, Inc., Case No. 13-40837-JDP.

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT SCOTT PAUL'S MOTION TO DISMISS—10**

DATED THIS 24th day of October 2013.

                              **MCDEVITT & MILLER LLP**

                              By: /s/ Celeste K. Miller
                              Celeste K. Miller
                              Attorneys for Defendant Scott Paul

                              **MORGAN, LEWIS & BOCKIUS LLP**

                              By: /s/ Howard Holderness
                              Howard Holderness
                              Attorneys for Defendant Scott Paul

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT SCOTT PAUL'S MOTION TO DISMISS—11**

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of October, 2013, I filed the foregoing electronically through the CM/ECF System, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Craig R. Yabui**
Elam & Burke, P.A.
Email: cry@elamburke.com

**Joseph N. Pirtle**
ELAM & BURKE
Email: jnp@elamburke.com

**William G. Dryden**
ELAM & BURKE
Email: wgd@elamburke.com

**Dwight A. Healy**
WHITE & CASE LLP
Email: dhealy@whitecase.com

**Gayle Argon**
WHITE & CASE LLP
Email: gayle.argon@whitecase.com

**Thomas A. Banducci**
ANDERSEN BANDUCCI PLLC
Email: tab@andersenbanducci.com

MCDEVITT & MILLER LLP

By: /s/ Celeste K. Miller
Celeste K. Miller
Attorneys for Defendant Scott Paul