Celeste K. Miller (ISB No. 2590)
Chas. F. McDevitt (ISB No. 835)
Dean J. Miller (ISB No. 1968)
McDEVITT & MILLER LLP
420 West Bannock Street
P.O. Box 2564-83701
Boise, ID 83702
Tel: 208.343.7500
Fax: 208.336.6912
ck@mcdevitt-miller.com
joe@mcdevitt-miller.com
chas@mcdevitt-miller.com

Howard Holderness (CA Bar No. 169814) (Admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1740 /415.442.1000
Fax: 415.442.1001
www.morganlewis.com

*Attorneys for Scott Paul*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JH KELLY, LLC a Washington limited liability company, <br><br> Plaintiff, <br> *vs.* <br><br> TIANWEI NEW ENERGY HOLDINGS CO., LTD., a People's Republic of China company, TAO (MIKE) ZHANG, WEI XIA, SCOTT PAUL, DAYI (SEAN LIU, AND DOES 1-10, <br><br> Defendants, | **Case No. 13-cv-00368-BLW** <br><br> **MEMORANDUM IN SUPPORT OF SCOTT PAUL'S MOTION TO DISMISS AMENDED COMPLAINT** |

COMES NOW Defendant Scott Paul by and through counsel, Celeste K. Miller,

McDevitt & Miller, LLP, and Howard Holderness, Morgan, Lewis & Bockius, LLP, and submits

this Memorandum in Support of Scott Paul's Motion to Dismiss Amended Complaint under and pursuant to Fed. R. Civ. P. 8, 9 (b), and 12 (b) (1), (2), (4), (5) and (6) for lack of subject matter jurisdiction, lack of personal jurisdiction (including ineffective service of process) and for Plaintiff's second failure to state a claim against Mr. Paul upon which relief could be granted.

## I.      Procedural Background

Plaintiff filed the Complaint on August 20, 2013. (Doc.1). On September 16, 2013, Mr. Paul filed a motion to dismiss the Complaint and a supporting memorandum. (Doc.6 & 7). On October 4, 2013, Defendants Tao (Mike) Zhang and Dayi (Sean) Liu filed a joint motion to dismiss that was similar to Mr. Paul's then pending motion (Doc.15, 16, & 17). On October 10, 2013, Plaintiff filed its papers in opposition to Mr. Paul's motion to dismiss. (Doc.19). On March 13, 2014, the court heard oral argument on the Defendants' motions and on March 17, 2014, issued its Memorandum and Order Re: Motions to Dismiss. (Doc.34).[1] On April 6, 2014, Plaintiff filed an Amended Complaint. (Doc.35).

## II.     Summary of Argument

Mr. Paul moves to dismiss the Amended Complaint generally because like the Complaint that the court dismissed, the Amended Complaint inadequately pleads fraud and civil RICO. The Amended Complaint also includes a new count based on common law negligence that similarly fails to state a claim upon which relief can be granted.   There are six primary reasons why Plaintiff's claims should be dismissed:

---

[1] Given the similarities between the Amended Complaint and the original defective Complaint, Mr. Paul incorporates herein by reference those points and authorities cited by all moving parties in their earlier memoranda and at oral argument as well as the findings of the court in its March 17, 2014 Memorandum and Order.

*First,* Plaintiff fails to allege specifically how the statements it attributes to Mr. Paul were false when he made them; if the statements were not false it is implausible that Mr. Paul made "knowingly" false statements;

*Second,* Plaintiff fails to allege that its losses were caused by Mr. Paul's statements or conduct rather than by breach of contract by Hoku Materials, Inc. (hereinafter "Materials"), which deficiency robs the court of subject matter jurisdiction;

*Third,* Plaintiff fails to allege a civil RICO "enterprise" separate from a RICO "person";

*Fourth,* Plaintiff fails to allege a plausible fraud scheme underlying the wire fraud predicate to its civil RICO counts;

*Fifth,* Idaho does not recognize claims for negligent misrepresentation, nor under the circumstances of this case does Idaho recognize a duty of care to prevent economic loss to another; and

*Sixth,* the Court lacks personal jurisdiction over Mr. Paul.

## III. Statement of Alleged Facts

For purposes of this motion Mr. Paul accepts as true the following factual allegations in the Complaint and/or the Amended Complaint: JH Kelly is a limited liability company organized in the state of Washington; Mr. Paul is a resident of Hawaii; at relevant times Mr. Paul served as the Chief Executive Officer of Hoku Corporation, a Director of its Board and as a Director of the Board of Materials, a wholly-owned subsidiary of Hoku Corporation; that Materials intended to manufacture polysilicon at a plant (the Project) to be constructed in Pocatello, Idaho; that in 2007 JH Kelly was hired as the general contractor for the Project; that Defendant Tianwei New Energy Holdings Co., LTD., (Tianwei) was the majority shareholder of Hoku Corporation from approximately December 2009 until July 2, 2013, the date that Hoku Corporation and Materials

each filed Chapter 7 bankruptcy proceedings in the District of Idaho;[2] that in approximately

October 2011 Materials began to fall behind in payments to Plaintiff; and when Materials filed

bankruptcy Project construction was incomplete; it then owed Plaintiff approximately $25

million; and Plaintiff's fraud and RICO claims against Mr. Paul are based on specific email

statements he made on November 17 and 23, 2011.

## IV. Argument

### A. Plaintiff's Fraud and RICO Claims Still Fail to Meet Federal Pleading Standards.

#### 1. Fraud and RICO claims are subject to heightened pleading standards.

Fraud and civil RICO allegations must be pled with specificity and particularity as to

circumstances. *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156 (9th Cir. 2009); Idaho R. Civ. Pro.

9(b), Fed. R. Civ. Pro. 9(b). The Ninth Circuit and this court have consistently so held.

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990)(Complaint lacked

cognizable legal theory), *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir.

1989)(the particularity requirements of Rule 9 (b) apply to civil RICO claims); *In re Toyota*

*Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litigation,* 785

F. Supp. 2d 883, 918 (C.D. Cal. 2011), relying on *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

1097, 1106 (9th Cir.2003)(fatal pleading deficiencies for failure to allege the "who, what, when,

where, and how" of the allegedly fraudulent conduct). *See also Maune v. Bankers Life &*

*Casualty Ins. Co.,* Case No. CV 10-074-E-BLW, 2010 BL 115282 at 4 (D. Idaho May 24,

2010)(case dismissed for generic allegations and failure to plead a plausible cause of action);

*AMX Intl., Inc. v. Battelle Energy Alliance, LLC.*, Case No. CV-09-210-E-BLW, 2009 BL

270098 (D. Idaho Dec. 16, 2009)(case dismissed with leave to amend).

---

[2] *In Re Hoku Corporation*, Debtor, Case No. 13-40838; *In Re Hoku Materials, Inc.*, Debtor, Case No. 13- 40837.

Viewed through that lens it is readily apparent that Plaintiff's claims again fail.

## 2. **Materials' breach of contract does not create individual fraud liability.**

While seeking relief as a creditor in bankruptcy court, Plaintiff continues its attempt in this action to "transmogrify" Materials' breach of its contract to pay Plaintiff into a fraud and civil RICO action against Mr. Paul, individually. A breach of contract claim cannot "be transmogrified into a civil RICO claim by the facile device of charging that the breach was fraudulent." *Carr v. Tillery*, 591 F.3d 909, 918 (7th Cir. 2010). Bankruptcy relief exists for debtors who, for whatever reason, simply cannot fulfill their contractual payment obligations to creditors. Plaintiff's second attempt to state a claim for relief in this action beyond relief available to it through the bankruptcy process exposes the same fundamental flaws as in its first failed attempt to characterize its contract losses as having been caused by fraud.

## 3. **The Amended Complaint insufficiently alleges falsity and knowledge of falsity that are necessary elements of a fraud or RICO claim.**

Plaintiff's Amended Complaint contains new allegations, informed in part by both the court's decision and defense arguments. Despite the new allegations, however, the Amended Complaint fails to cure defects of the Complaint, including the key issue upon which the court's dismissal of both the fraud and RICO claims in the Complaint rested: Plaintiff's failure to adequately allege that statements Mr. Paul made were false or that he knew the allegedly offending statements were false at the time he uttered them.

A promise to pay in the future that is subsequently broken is not a fraudulent representation unless a plaintiff alleges circumstances that demonstrate a lack of intent to pay at the time the promise was made. *Gillespie v. Mountain Park Estates, LLC*, 142 Idaho 671, 673-74 (2006)(fraud cannot be based on the failure to perform a promise or an agreement to do

something in the future).  The Ninth Circuit requires plaintiffs to allege specifically what is false

or misleading about a statement and why it is false.  *Rubke v. Capitol Bancorp Ltd.,* 551 F.3d

1156, 1161 (9th Cir. 2009)(quoting *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir, 1999)).

     Accordingly, this court concluded as to Plaintiff's Complaint, "That Tianwei later

reneged on its promise to finance the construction of the Project or to pay the debts owed to

plaintiff is insufficient to allege that defendants' representations were false at the time they were

made.  Subsequent sobering facts do not make earlier statements false at the time they were

made."  *In Re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), superseded by

statute on other grounds, 15 U.S.C. § 78u-4.  Memorandum and Order, page 8.  Despite the

court's clear articulation of the applicable pleading standard that must be met, the Amended

Complaint does not allege specific facts to demonstrate either that Tianwei lacked intent to

finance construction when it gave assurances that it would or that Mr. Paul knew that Tianwei

would later renege on its assurances.

     Rather, the Amended Complaint (in the enumerated paragraphs) portrays a convincing

depiction of the depth and breadth of Tianwei's commitment to provide financing and to

facilitate construction financing of the subject Project through completion.  It points out that

between fall 2009 and February 2012:

- Tianwei signed a $468 Million ten-year contract to purchase polysilicon from Hoku Materials, Inc., with $79 million pre-paid (15);
- Tianwei converted debt for pre-paid product into stock (17);
- Tianwei agreed to investment in Hoku Corp., and debt financing (17);
- Tianwei gained shareholder and board control of the Hoku companies (17);
- Tianwei increased its financial commitment in a falling polysilicon market (16, 17);
- Tianwei controlled Hoku communications (22);

- Tianwei acted as the "alter-ego funding arm" of the Hoku companies (19);

- Tianwei installed its executive, Mr. Xia, and employees, Zhang and Liu, as executives of Hoku companies (20, 21);

- Tianwei demonstrated China's plan to dominate and innovate the solar energy market (25);

- Tianwei executives attended meetings in Pocatello, Idaho on several occasions (38) and Chinese dignitaries visited the site in December 2011 (44);

- Tianwei committed to provide additional funding in February 2012 (46): and

- Tianwei extended maturity dates on loans to the Hoku companies (46);

Despite the foregoing allegations demonstrating Tianwei's financial commitment, Plaintiff concludes that two email statements Mr. Paul made to it in November 2011 regarding mere delays of Tianwei's own expressed commitments to fund or facilitate funding of construction were false at the time they were made.[3]  The Court has already rejected such basis for Plaintiff's claims against Mr. Paul.

The irony of Plaintiff's struggles and failure to allege facts that demonstrate that Tianwei did not intend to finance the Project is underscored by its conclusory allegations that Mr. Paul somehow knew that Tianwei lacked that precise intent.  In other words, Plaintiff says that Mr. Paul knew what it itself cannot now properly articulate, notwithstanding repeated efforts, knowledgeable counsel and sophisticated involvement in the bankruptcy process.

Plaintiff's effort to thread this miniscule needle begins by asserting opportunistically that Plaintiff understood that communications coming from Hoku Corporation originated with Tianwei. Amended Complaint para. 22.  Pointedly, Plaintiff alleges that Mr. Paul was a

---

[3] In Amended Complaint Para. 35 Plaintiff alleges conclusively that Mr. Paul and Mr. Zhang made damaging statements in 2011 about Tianwei's financing resources without alleging who specifically said what to whom, when or in what context.  Plaintiff's inferences that these random statements were false utterly fail to meet requisite pleading standards.

"spokesperson" for Tianwei and then cites to an email that Mr. Paul wrote to Plaintiff on

November 17, 2011.  While excerpted in the Amended Complaint, the email said in full:

> " I'd be happy to discuss this with you and Mason directly.  The short of it is it gets
> harder to move US dollars from China to the U.S. as we approach the end of the year.
> It's complicated, but basically the banks are each assigned a quota of USD at the
> beginning of the year.  By the end of the year, it is mostly used up.  This isn't to say that
> there is nothing left for transfer.  We're working hard with Tianwei to receive an
> allocation of what's left.  Bottom line: Hoku/Tianwei is not a credit risk.  There is just a
> timing issue."[4]

Plaintiff's allegations of fraud against Mr. Paul individually based on plucking portions

of the foregoing from the whole statement must fail.  Using excerpts to allege falsity of

statements is inconsistent with the requirement to plead fraud and civil RICO with specificity

and particularity.  The fact that Tianwei later reneged on its persistent funding commitments

cannot render Mr. Paul's statement false at the time it was made.  It strains credulity even further

to suggest that when he made the statements, Mr. Paul knew that they were false or that he

intended for Plaintiff to rely on false statements so that Tianwei or Materials could cheat Plaintiff

out of $25 million.   Without a crumb of evidence that prior to November 17, 2011, Tianwei had

informed Mr. Paul that it reversed its commitment to fund construction to completion, Plaintiff

simply cannot adequately allege that his statement was false.

Further, in his email transmission on November 23, 2011, that is referenced at paragraph

42 of the Amended Complaint, Mr. Paul stated,

> "… Sorry for the recent cash flow issues.  But don't lose sleep over it – we're good for
> the money.  Tianwei has committed to provide the funding we need to build this plant."[5]

Again, Mr. Paul's reassurances about temporary cash flow issues came with his refrain

that, "Tianwei has committed to provide the funding…"  Plaintiff never alleges a fact (known or

---

[4] See Complaint, para. 22 Doc. 1(email more fully quoted than in Amended Complaint); and Evans Declaration, Exhibit A, Doc. 19.
[5] See Evans Declaration, Exhibit B, Doc. 19.

unknown by Mr. Paul) contrary to Tianwei's unwavering expressions of commitment to fund the Project through completion.

Plaintiff cuts corners in the Amended Complaint by quoting excerpts from Mr. Paul's emails so that they sound less accurate than when read in full. Amended Complaint paragraph 43 provides some context, however, concerning difficulties of moving dollars from China to the United States because of quotas, and it points out that the "same thing happened at the end of last year." Plaintiff's own allegations defy its unsupported conclusions that Mr. Paul had any reason to doubt Tianwei's financial commitment to completion of the project, much less to lie about it to cheat Plaintiff.

Plaintiff attaches particular meaning to the phrase, "financing is in place," to suggest that parties using that phrase represented that cash was sitting in a desk drawer. Amended Complaint, para. 49. Believing or expressing that a lender will honor its financing commitments is not actionable in fraud after the lender changes its mind. Neither does such an expression suggest that $25 million in cash was readily on hand.

Similarly, Plaintiff equates a phrase that Hoku "had the budget" for the project with a budget line item of "cash on hand." In one paragraph Plaintiff alleges that Mr. Xia said, "we *will* ensure sufficient funds in place to complete the current contracts," and in the next paragraph Plaintiff alleges that Mr. Xia represented that sufficient financing *was* in place for the Project. Amended Complaint paras. 26 and 27. Plaintiff's conclusion that this amounts to fraud demonstrates the types of half quotes and flatly desperate allegations it makes to overcome the deficiencies of the dismissed Complaint. Pleading rules requiring specificity and particularity make no room for switching verb tenses and quoting half-truths to sustain fraud allegations.

Finally, Amended Complaint paragraphs 37 and 49 set out excerpts of all of the alleged misstatements the defendants made that Plaintiff lumps together to reach one giant conclusion that follows in paragraph 50 of the Amended Complaint. They include: "we will ensure..."; funds were secured but had to be moved from China to the US; Tianwei had enough funds to complete...; delay was due to lack of a signature; "Hoku/Tianwei is not a credit risk. There is just a timing issue"; "Tianwei has committed ..."; "the Project had Tianwei's ... full financial support"; and "Hoku has enough budget to complete the current contracts."

Plaintiff then attempts to allege in Amended Complaint paragraph 50 that the defendants' statements were false, "because;...Tianwei did not have in place committed financing ... Plaintiff, however, does not allege a single fact existing at the time of Mr. Paul's statements to support its conclusion. The Amended Complaint does not allege any facts about Tianwei's ability (or lack thereof) to finance or to facilitate financing to complete this project. Hoku's internal financial documents referenced in the Amended Complaint reflect Hoku's financial condition, not Tianwei's. Amended Complaint paragraph 50 alleges only Plaintiff's irrelevant conclusions that financing never existed in the first place.

At Amended Complaint paragraph 50, Plaintiff goes on to quote a March 2012 Hoku email asking Plaintiff for patience while Hoku will "work toward securing the funds..." Plaintiff's conclusion, however, that the email meant that financing never existed in the first place is simply wishful thinking, uttered in hopes of surviving another motion to dismiss. In the end, however, Plaintiff's Amended Complaint for fraud and civil RICO rests on the same allegations supporting its deficient Complaint. As alleged in Amended Complaint para. 50, Plaintiff concludes that Mr. Paul's statements were false because, "... no additional payments

were made to JH Kelly after October 2011." This Court has rejected such basis for fraud and civil RICO claims against Mr. Paul. It should do so again.

Finally, one other related effort by Plaintiff must be noted. The Amended Complaint suggests in new allegations concerning contract modification negotiations between Tianwei and Plaintiff that the negotiations reflected Tianwei's intent to deny payment to Plaintiff. Amended Complaint, para. 18. Plaintiff places various defendants at the center of those negotiations, suggesting Mr. Paul's then knowledge of Tianwei's lack of intent to pay. Such a conclusion is simply not plausible. Negotiating modifications to contract terms strongly evidences intent to pay under new terms. In order to adequately state a fraud claim against Mr. Paul, the Plaintiff must allege the outright falsity of his statements at the time they were made. A conclusion that contract negotiations demonstrate falsity of Mr. Paul's statements and/or his knowledge of falsity falls far too short.

Failure to adequately allege the falsity of statements necessarily renders general allegations that they were knowingly false when made implausible on their face. As to the element of knowledge of falsity each of the newly alleged fraud based counts fails to comply with Fed. R. Civ. Pro. 9(b), or even with Fed. R. Civ. Pro. 8 or with dictates of the Supreme Court that general allegations of knowledge at least be plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.*, at 556. *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009). No reasonable inference of liability can be drawn from allegations in the Amended Complaint concerning Mr. Paul's statements or conduct.

The court's earlier conclusion regarding the Complaint applies to the Amended Complaint: "In short, plaintiff has not sufficiently alleged that defendants' representations that Hoku or Tianwei intended to pay plaintiff for its work on the project were false, much less that at the time they made these representations defendants knew that they were false, even under the "less rigid" standards imposed by Rule 8." Memorandum and Order, page 8. Failure to adequately allege the falsity of statements necessarily renders general allegations that they were knowingly false when made implausible on their face.

### 4. **Plaintiff lacks standing to pursue fraud and civil RICO, depriving the Court of subject matter jurisdiction.**

Mr. Paul argued strenuously that the Complaint in this case failed to adequately plead facts demonstrating that Plaintiff's losses were directly or proximately *caused* by the email statements he made in late November 2011. New allegations in the Amended Complaint prove this point.

Plaintiff is required to allege direct and proximate cause with specificity and particularity in order to have standing to sue in fraud and civil RICO in federal court. *Gilbert v. Bank of America Corp.*, Case No. 1:11-cv-00272-BLW, 2012 BL 247871 (D. Idaho Sept. 26, 2012). Standing to sue is a constitutional linchpin to this court's subject matter jurisdiction over the action. Article III, Section 2, United States Constitution, *Luhan v. Defenders of Wildlife*, 504 U.S. 555 (1992). The Complaint lacked a factual basis for causation such as specifying what work Plaintiff did in reliance on Mr. Paul's statements or about cost details, invoices or whether Plaintiff incurred liabilities to subcontractors.

For example, in an apparent effort to address this issue, the Amended Complaint introduces a new, internal Hoku email that was sent one hour after Mr. Paul's November 17, 2011, email to Plaintiff quoted above. The email, however, points to the lack of reliance that Plaintiff placed on any communications that it had with Mr. Paul. The internal email advises Mr. Paul that the Hoku companies then owed Plaintiff about $20 million, and they lacked a "clear" plan to pay the debt. Amended Complaint para. 40. First, Plaintiff's conclusion that the email meant there was *no* plan to pay the debt misstates the email. Second, that conclusion ignores Mr. Paul's (among others') repeated statements as alleged in the Amended Complaint that the plan to pay the debt was to await the new year when Tianwei's promises to finance construction through project completion could be realized. Third, this allegation establishes that nothing Mr. Paul said to Plaintiff on or after November 17, 2011, caused Plaintiff to incur its claimed losses of $25 million in the remaining thirteen days of the month.

If Plaintiff was owed $20 million on November 17, 2011, then the most it could claim to have lost in late November 2011, if any, in reliance on Mr. Paul's email was $5 million. The Amended Complaint fails, however, to adequately allege that Mr. Paul's statements caused any amount of loss. Plaintiff failed to attach contracts as exhibits, or specify what work, if any, it did in alleged reliance on Mr. Paul's statements. Amounts incurred as and after Mr. Paul's statements could have been for contract items such as bonuses or retainages instead of for any actual work. Plaintiff's failure to allege causation with specificity fuels speculation.

### 5. The Amended Complaint insufficiently alleges a RICO Enterprise.

Mr. Paul argued earlier that in its Complaint Plaintiff failed to sufficiently allege distinctiveness among the defendants to state a viable claim of RICO enterprise under 18 U.S.C. § 1962(c) or under the Idaho Racketeering Act. Plaintiff's Amended Complaint does not contain

any new allegations to cure this continuing deficiency. The district court for the Eastern District of California recently considered a distinctiveness argument under facts similar to this case and found the enterprise allegations there insufficient. *Moran v. Bromma*, No. 13-cv-00487 JAM-CKD, 2014 BL 26931 (E.D. Cal. Jan. 31, 2014), relying in part on *Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 2010 BL 120881, 4-5, 2010 WL 3619884 (N.D. Cal. May 28, 2010), dismissed plaintiffs' Second Amended Complaint.

In the Dreyer's Ice Cream case the district court dismissed the RICO claims against Dreyer's for lack of distinctiveness among defendants necessary to allege a RICO enterprise. Plaintiff is required to allege a RICO person and a RICO enterprise that is distinct from the RICO person. *Id.*, *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)(a parent and subsidiary are not sufficiently distinct for the purposes of § 1962(c)). As in *Moran,* Plaintiff in this case alleges a parent company, Tianwei, employees of it and employees of its former subsidiary, Hoku Corporation, including Hoku's former CEO, Mr. Paul, as the enterprise.

Plaintiff does not allege the existence of a RICO person distinct from this alleged RICO enterprise. As the court held in *Moran*, this is insufficient even when pleading an association-in-fact RICO enterprise. *See also River City Markets, Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1461 (9th Cir. 1992) ("a single individual or entity cannot be both the RICO enterprise and an individual RICO defendant"); *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008).

### 6. The Amended Complaint insufficiently alleges a RICO fraud scheme.

To state a viable civil RICO claim the plaintiff is required to allege a pattern of racketeering activity as one of the essential elements. *Sedima S.P.R.L. v. Imrex Company, Inc. et al.*, 473 U.S. 479 (1985). Plaintiff alleges wire fraud as the racketeering activity in this case. As

the Ninth Circuit holds, "A wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2008) (internal quotation marks omitted). All such allegations must be plead with particularity. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989). Plaintiff's fraud scheme allegations are anything but particular.

It appears that in Amended Complaint paragraph 18 Plaintiff attempts to allege the commencement of a scheme in which the Defendants painted a public reason for modifying Tianwei's financial commitment to the project (to assure stakeholders of financial commitment) while hiding the actual purpose, which was for Tianwei to take control of the Hoku companies so it could salvage its investment as the market price of polysilicon was deteriorating. Assuming that such differing purposes are somehow deceitful, Plaintiff fails to allege a single fact supporting or evidencing its conclusion. There are no "smoking gun" memos, emails, oral disclosures or circumstances from which an inference could plausibly be drawn to support Plaintiff's conclusion that collectively the defendants "commenced a plan" of any sort, much less one to interfere with Plaintiff's contracts or to defraud it.

Taking shareholder and board control and trading debt for equity in order to salvage a return on investment are entirely consistent with ensuring stakeholders of construction funding commitments. Plaintiff concludes that salvaging an investment return was the Defendants' "actual" purpose while its "stated" purpose was to assure stakeholders of financing. This conclusion is no substitute for the requisite pleading of the "who, what, when, where and how"

particularities of an adequately pled fraud scheme. It is impossible to discern even an inference of fraud from the alleged circumstances. Plaintiff simply does not understand fraud schemes or what it means to plead facts specifically and with particularity.

Plaintiff apparently suggests that this "plan" the defendants collectively hatched continued through a subsequent series of negotiations with defendants to modify terms of its contract with Materials. Again, Plaintiff's efforts to imbue these acts with indicia of fraud or deceit must fail. Highly sophisticated parties met on various occasions to discuss contract terms, and the result was a modified deal. Plaintiff kept working at the site, but eventually Tianwei reneged on its commitment to fund the project or to facilitate funding it to completion. That is the basis of a breach of contract action or for a proof of claim against a debtor in bankruptcy. Plaintiff essentially attributes clairvoyance to Mr. Paul for him to have known of any reason why or specifically when Tianwei decided to cease its participation in financing or facilitating financing the Hoku construction project.

In Amended Complaint paragraphs 61 and 67 Plaintiff attempts to allege more about the fraud scheme defendants allegedly commenced in order to conceal Tianwei's "actual" strategy. Conclusions that Tianwei "used the funds owing and designated to JH Kelly for other, improper purposes and/or to fraudulently induce JH Kelly into continuing its work on the project without payment knowing it would never pay JH Kelly at the agreed price," do not describe a fraud scheme with specificity and particularity. Neither an imaginary diversion of funds nor an imaginary "improper purpose" for using those funds is supported by factual allegations in the Amended Complaint. The Amended Complaint fails to allege a plausible fraud scheme or civil RICO claim against Mr. Paul with requisite specificity and particularity.

For its fraud scheme to make any logical sense Plaintiff needs to explain by way of factual allegations what these defendants could possibly have stood to gain if Plaintiff's conclusions were true. Plaintiff lacks a unifying motive or reason why the defendants, either individually or collectively, would have snookered Plaintiff into continuing site work if they all knew the funding sources had dried up and the plant would not be completed.

If Tianwei never intended to pay Plaintiff and if all the other defendants knew that then why not just stop before negotiating contract modifications? Why court other contractors? Why did none of the Defendants leave to take positions with profitable companies? According to Plaintiff's logic they all stayed in the face of no further project funding just for the purpose of cheating Plaintiff, and not only for the $7 million owed during modification negotiations, but of as much as they could possibly wring out of Plaintiff by convincing it to keep working.

If the defendants weren't embezzling, stealing property or diverting funds to themselves what would be the point of the scenario Plaintiff paints? Why would Chinese officials travel to Pocatello, Idaho? Other than differing views of contract terms Plaintiff describes no dispute, animosity or rancor toward it, generally or specifically, with or from any Defendant. The Amended Complaint allegations as a whole simply do not express a plausible claim of fraud, a fraud scheme or civil RICO.

### B. The Amended Complaint Insufficiently Alleges Negligence.

The Amended Complaint includes one new count based on a state law claim of negligence. The heightened pleading standards of Rule 9(b) do not apply to a claim of negligence, but the Plaintiff is required under Fed.R.Civ.Pro. 8 to allege sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The negligence count fails to do so.

### 1.    Mr. Paul Does Not Owe Plaintiff a Duty of Care.

The Idaho Supreme Court set out the elements of negligence in *Nation v. State*, 144 Idaho

177, 189, 158 P.3d 953 965 (2007), as:

> " '(1) a duty, recognized by law, requiring the defendant to conform to a certain standard
> of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's
> conduct and the resulting injury; and (4) actual loss or damage.' "(citations omitted).

Idaho does not recognize a duty of care to prevent purely economic losses, except in

exceedingly rare circumstances not applicable here.  Plaintiff seeks to recover purely economic

losses, and it alleges a duty of care based on "specialized relationships" that have only been

recognized by Idaho courts in two types of circumstances: either professionals performing

personal services for another or, "an entity holding itself out as having expertise in a specialized

function." *Mountain View Hosp., LLC v. Sahara, Inc.*, No. 4:07-cv-464-BLW, 2011 BL 267120,

13-14 (D. Idaho 2011), *Blahd v. Richard B. Smith, Inc.*, 108 P.3d 996, 1000 (Idaho 2005), *Nelson

v. Anderson Lumber Co.*, 140 Idaho 702, 710, 99 P.3d 1092, 1100 (Ct. App. 2004)(denying the

exception where plaintiff did not rely on defendant's expertise so as to have created a special

relationship) *Duffin v. Idaho Crop. Improvement Ass'n.*, 126 Idaho 1002, 1010, 895 P.2d 1195,

1203 (1995)(plaintiff farmer could pursue tort claim against an entity, a seed certification

company, whose advertising campaign was designed to induce reliance on it by the farmer for

certified seeds that did not produce expected results).

Since Mr. Paul was neither a professional providing personal services to Plaintiff nor an

entity, he owed no duty of care to Plaintiff to prevent its economic loss.  *Id.* This court in

*Mountain View Hosp., LLC v. Sahara, Inc.*, declined to extend an exception to the general rule to

the plaintiff's claims there against a defendant entity with allegedly specialized expertise in

construction of medical facilities.  *Id.*, at 15.  The court here should likewise decline to extend an

exception to the general rule that a person does not owe a duty of care to another to prevent

purely economic losses because under Idaho law neither of the circumstances exist in the instant

case for recognizing a duty of care.

### 2. Idaho Does Not Recognize Negligent Misrepresentation.

Idaho does not recognize a cause of action for negligent misrepresentation except in

professional relationships involving accountants. *Duffin v. Idaho Crop. Improvement Ass'n.*, 126

Idaho 1002, 1010, 895 P.2d 1195, 1203 (1995). Plaintiff does not allege that Mr. Paul is or was

an accountant at any time relevant to this action. The negligence count in the Amended

Complaint can only be construed as alleging breach of a duty of care through negligent

misrepresentations.

Plaintiff alleges, that, "Defendants knowingly induced Plaintiff's reliance on specialized

functions by making the representations referred to above; and Defendants' omissions and/or

misrepresentations" ... breached the duty of care. These allegations refer to and incorporate 70

preceding Complaint paragraphs claiming fraudulent misrepresentations. There is no basis in

Idaho law for Plaintiff's allegations that Mr. Paul owed a duty of care, much less that he

breached one by making negligent misrepresentations.

### 3. The Negligence Count Insufficiently Alleges Causation.

Mr. Paul incorporates his argument above that Plaintiff's own Amended Complaint

demonstrates that his statements did not cause Plaintiff's claimed losses. Amended Complaint

Count Four must be dismissed for failure to state a claim under Idaho law.

### C. The Court Lacks Personal Jurisdiction Over Mr. Paul.

Mr. Paul incorporates herein the points and arguments he made regarding lack of

personal jurisdiction in support of his earlier motion to dismiss the Complaint as well as those

earlier made by Defendants Zhang and Liu regarding lack of personal jurisdiction. The Court

did not rule on those grounds for dismissal. If Mr. Paul's motion to dismiss the fraud and civil

RICO counts of the Amended Complaint is granted and his motion to dismiss the negligence

count in the Amended Complaint is denied the issues raised and arguments earlier made

regarding personal jurisdiction should be considered. In such event the court could elect to

retain supplemental jurisdiction over the negligence count unless the court finds that it lacks

personal jurisdiction over Mr. Paul. 28 U.S.C. § 1367 (c) (3).

Neither the Plaintiff nor Mr. Paul was a resident of Idaho at the time this action

commenced. Plaintiff alleges generally that Mr. Paul did business and committed tortious acts in

Idaho. Mr. Paul is a Hawaii resident. He was the CEO of Hoku Corporation and a board

member of Materials, both Delaware corporations. Hoku Corporation was principally based in

Hawaii.[6] Mr. Paul emailed principals of Plaintiff, a Washington corporation, principally based in

that state, concerning payment on sums then past-due and owed by Materials. In the absence of

a specific allegation that a single aspect of the subject conduct in fact even occurred in Idaho,

neither the conduct nor its effect should be construed as having been "aimed at" the forum state.

*Pavavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998).

## CONCLUSION

Based on the Amended Complaint, the record herein, and the foregoing arguments,

Plaintiff's Amended Complaint against Scott Paul should be dismissed for failure to state a claim

upon which relief can be granted, lack of subject matter jurisdiction and for lack of personal

jurisdiction over Mr. Paul.

---

[6] Exhibit C to Declaration of Joseph N. Pirtle (Doc. 19, Attachment # 4).

**MEMORANDUM IN SUPPORT OF SCOTT PAUL'S MOTION TO DISMISS AMENDED COMPLAINT—20**

DATED THIS 21st day of May 2014.

**MCDEVITT & MILLER LLP**

By: /s/ Celeste K. Miller
Celeste K. Miller
Attorneys for Defendant Scott Paul

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ Howard Holderness
Howard Holderness
Attorneys for Defendant Scott Paul

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of May, 2014, I filed the foregoing document electronically through the CM/ECF System, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Craig R. Yabui,**   cry@elamburke.com

**Joseph N. Pirtle,**   jnp@elamburke.com

**William G. Dryden,**   wgd@elamburke.com

**Howard Holderness,** hholderness@morganlewis.com; cgreenblatt@morganlewis.com

**Jack S. Gjording,**   jgjording@gfidaholaw.com, cfouser@gfidaholaw.com, jhall@gfidaholaw.com, jsmith@gfidaholaw.com, ktonkin@gfidaholaw.com, lloyd@gfidaholaw.com

**Kelly Alfred Cameron,** kcameron@perkinscoie.com, docketboi@perkinscoie.com, shellylee@perkinscoie.com

**Michael O Roe,**   mor@moffatt.com, ccb@moffatt.com, ecf@moffatt.com, mjm@moffatt.com, moffattthomas@hotmail.com, tmh@moffatt.com

**Stephen C. Hardesty,** shardesty@perkinscoie.com, lstacy@perkinscoie.com

**MCDEVITT & MILLER LLP**

By: /s/ Celeste K. Miller
Celeste K. Miller
Attorneys for Defendant Scott Paul
