Celeste K. Miller (ISB No. 2590)
Chas. F. McDevitt (ISB No. 835)
Dean J. Miller (ISB No. 1968)
McDEVITT & MILLER LLP
420 West Bannock Street
P.O. Box 2564-83701
Boise, ID 83702
Tel: 208.343.7500
Fax: 208.336.6912
ck@mcdevitt-miller.com
joe@mcdevitt-miller.com
chas@mcdevitt-miller.com

Howard Holderness (CA Bar No. 169814) (Admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1740 /415.442.1000
Fax: 415.442.1001
www.morganlewis.com

*Attorneys for Scott Paul*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JH KELLY, LLC a Washington limited liability company,<br><br>Plaintiff,<br>vs.<br><br>TIANWEI NEW ENERGY HOLDINGS CO., LTD., a People's Republic of China company, TAO (MIKE) ZHANG, WEI XIA, SCOTT PAUL, DAYI (SEAN LIU, AND DOES 1-10,<br><br>Defendants, | Case No. 13-cv-00368-BLW<br><br>**REPLY MEMORANDUM IN SUPPORT OF SCOTT PAUL'S MOTION TO DISMISS AMENDED COMPLAINT** |

COMES NOW Defendant Scott Paul by and through counsel, Celeste K. Miller,

McDevitt & Miller, LLP, and Howard Holderness, Morgan, Lewis & Bockius, LLP, and submits

**REPLY MEMORANDUM IN SUPPORT OF SCOTT PAUL'S MOTION TO DISMISS AMENDED COMPLAINT—1**

this Reply Memorandum in Support of Scott Paul's Motion to Dismiss Amended Complaint (Doc. 38) and in reply to Plaintiff's Response (Doc. 47). The Amended Complaint against Mr. Paul should be dismissed with prejudice.

## I. Summary of Argument

The crux of Plaintiff's Response is based on the implication that Mr. Paul told JH Kelly that funds were in place to pay Plaintiff. Plaintiff states in its Response, "In its simplest terms, this case is about representations that they 'had the money.'" Mr. Paul, however, cannot be held liable on that theory. There are five primary reasons why.

*First,* Mr. Paul never made such a representation and for that reason alone, he should be dismissed from this action. Plaintiff's failure in the Amended Complaint to attribute a false statement to Mr. Paul himself is outlined in Plaintiff's own Response. In over a page of single-spaced references to the Amended Complaint on pages 4 and 5 of the Response, Plaintiff highlights the representations at the center of this case. Mr. Paul, however, did not make the majority of these statements. Moreover, those that are attributed to Mr. Paul underscore the fact known by all at the time: Mr. Paul's company, Hoku Corporation, had no money itself and relied on funds that it believed would be coming – but had not yet arrived – from Defendant Tianwei New Energy Holdings Co. Ltd. ("Tianwei"). For this reason alone, Plaintiff states no case against Mr. Paul.

*Second,* the allegations outlined on pages 4 and 5 of the Response suggest that Plaintiff communicated directly with Tianwei through Messrs. Xia and Zhang[1] rather than relying on statements from Hoku through Mr. Paul. Plaintiff relied on Tianwei for confirmation of that company's intentions before taking any action.

---
[1] See: Amended Complaint (Doc. 35, para. 20).

*Third*, Plaintiff lumps the defendants' conduct together because its allegations fail to support a claim against Mr. Paul based on his own conduct. The RICO counts are plagued with other deficiencies that he will address, but Mr. Paul's reply to the fraud, RICO and negligence counts is based on those allegations of *his* conduct for which he has been unjustifiably sued as an individual for a minimum of $75 million.

*Fourth,* the Amended Complaint fails (i) to meet the pleading standards of Rule 8, particularly as focused by the Supreme Court cases of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,570 (2007), and by this court in its March 17, 2014 decision (Doc. 34); (ii) to meet the heightened pleading standards of Rule 9(b) as applied to the fraud and RICO counts; or (iii) to state a claim for relief under a negligence theory to recover for purely economic loss.

*Fifth,* the Amended Complaint is replete with allegations that reiterate Plaintiff's once-failed attempt to turn a breach of contract action against bankrupt Hoku companies into a fraud action against CEO Scott Paul and others. Breaches of contract rarely, if ever, justify fraud and RICO claims, and the allegations here, as amended, certainly do not justify the claims made against Mr. Paul.

## II. Argument

### A. Mr. Paul's Specific Statements Contradict Plaintiff's Allegations

In its response to Mr. Paul's motion to dismiss Plaintiff quotes eight Amended Complaint paragraphs that form the basis of its fraud and RICO allegations. Only three of those eight paragraphs pertain to Mr. Paul, and only two of them reference emails he wrote (giving sufficiently factual information about by and to whom written, when and pertaining to what). Even then Plaintiff distorts the actual email contents in its Response. Mr. Paul's email

statements can only be construed as stating that Tianwei committed to fund construction through completion after year-end complications eased.

The only inference that can be drawn from Mr. Paul's words is that on November 17, 2011, funds were NOT then available or "on hand."[2] This email communicates exactly what Plaintiff claims was fraud for the defendants to NOT have told it – that funds were not then available due to complicated banking regulations and that the parties were working on a solution. Plaintiff provides no factual basis or credible allegation that this statement was false when it was made.

Mr. Paul's email of November 23, 2011, reassures Plaintiff of the commitment by Tianwei to Hoku to "provide the funding we need to build this plant."[3] It defies logic to claim that Mr. Paul's statements were knowingly false assertions that funds were on hand in October or November 2011 with which to pay Plaintiff. It also fails to comply with a basic Rule 8 requirement to state facts that suggest more than a possibility of liability but that are plausible on their face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 556-57). A statement must, of course, be false for the speaker to have known it was false.

Plaintiff has yet to allege, even vaguely, that Tianwei never committed to Mr. Paul or to Hoku that it would fund the project to completion. Instead, Plaintiff imbues Mr. Paul with prescience to have known since September 2009 that Tianwei was not going to fund the project to completion even as it facilitated financing to the tune of hundreds of millions of dollars right

---

[2] See: Memorandum in Support of Defendant Scott Paul's Motion to Dismiss Amended Complaint, full text of email (Doc. 39, pg. 8).

[3] Plaintiff even notes in its Response (Doc. 47, pg. 5) that this email, "... reiterated a prior representation made to JH Kelly executives by Mr. Xia that Tianwei 'will ensure that sufficient funds are in place till completion of the project.'"

**REPLY MEMORANDUM IN SUPPORT OF SCOTT PAUL'S MOTION TO DISMISS AMENDED COMPLAINT—4**

up to the point that it didn't. More plausible than anything Plaintiff has alleged is to suppose that Plaintiff, among others, actually believed this project was too close to completion in late 2011 for Tianwei to walk away, that it was too big to fail.

The third paragraph that Plaintiff alleges against Mr. Paul is set out at page 4 of its Response brief, and it utterly fails to meet pleading requirements.[4] The subject allegation lumps Messrs. Paul and Zhang together without distinction or detail. Plaintiff substitutes Mr. Paul's actual words from his emails with words possibly spoken or written by Mr. Zhang while leaving out dates, places, persons hearing the statements or how they were communicated. Plaintiff cannot cure pleading deficiencies by conflating statements Mr. Paul actually made with the vague allegation that he (or maybe Mr. Zhang) made the alleged statements on, "multiple occasions during 2011." As alleged in paragraph 35, payments under the new arrangements only started falling behind in October 2011 so the timing of allegedly actionable statements by Mr. Paul is critical.

Plaintiff also alleges that Hoku financial records demonstrate Mr. Paul's knowledge that his statements were false. Mr. Paul's statements, however, clearly indicate the Hoku was relying on Tianwei to facilitate financing or to finance the project through completion. The Hoku Corporation 10-Q filing with the SEC for the quarter ending on December 31, 2011, that Plaintiff relies on demonstrates the enormous extent to which Hoku relied on debt financing in 2011, all of which was back-stopped by letters of credit Tianwei extended to Chinese bank lenders.

---

[4] See also: Doc. 35, para. 35.

**REPLY MEMORANDUM IN SUPPORT OF SCOTT PAUL'S MOTION TO DISMISS AMENDED COMPLAINT—5**

Plaintiff misleadingly construes the portion of the Form 10-Q it relies on by concluding that, "... no credit agreements of other new debt financing sufficient to cover construction costs were secured between June 2011 and December 2011. (Doc. 19-4, pp. 17-24)."[5] Those pages in fact indicate that in June, September and November 2011, Hoku entered into credit agreements for funds totaling $40.5 million with various lenders. Tianwei issued letters of credit for all of them. Perhaps this amount was not the predicted number to complete construction, but it does not even suggest that Mr. Paul knew that anything he said was false. The 10-Q establishes that the Hoku companies and Tianwei were actively working to finance the total needed to complete the project, and the 10-Q also supports Mr. Paul's statements that fewer funds were available from Chinese banks near the end of each year and that Tianwei remained committed to fund the project to completion.[6]

As the court already noted, the subject Form 10-Q is entirely consistent with Mr. Paul's statements to Plaintiff.[7] The pattern of 2011 financing summarized in the 10-Q unequivocally established Tianwei's ability and commitment to provide or facilitate funding for this project. Apart from the slowdown in overall numbers loaned near the end of the year (when quotas were being met), the financial documents contradict Plaintiff's allegations.

The simple fact is that Tianwei decided at some point not to provide further funding or support to complete the project or to pay the balance of Plaintiff's contract. Plaintiff has not properly alleged either that Tianwei lacked the ability to obtain or provide funding to complete the project (or that Mr. Paul knew of that inability) or that it had not in fact committed to Hoku

---

[5] Plaintiff's Response (Doc. 47, pg. 6).
[6] See: Excerpts of 12-31-11 Hoku Corporation Form 10-Q (Doc. 20, Attachment 2).
[7] Memorandum and Order Re: Motions to Dismiss (Doc. 34, pg. 7).

**REPLY MEMORANDUM IN SUPPORT OF SCOTT PAUL'S MOTION TO DISMISS AMENDED COMPLAINT—6**

that it would fund the project to completion. These remain the fundamental flaws in Plaintiff's lawsuit.

Perhaps some of the defendants used present tense verbiage concerning funds with which to pay in response to Plaintiff's late 2011 payment demands. Mr. Paul, the CEO of Hoku Corporation, wrote only in future terms and of the complexity of funding issues (consistently with his disclosures throughout the Hoku 10-Q reports). Plaintiff does not plausibly allege any conduct by Mr. Paul to overcome his motion to dismiss the fraud count in Plaintiff's Amended Complaint.

    **B.**    <u>RICO – Fictional Fraud Scheme; Deficient Allegations of Elements</u>

Plaintiff's explanation of its fraud scheme allegations states nothing more than a possible claim for interference with contract.[8] The Amended Complaint (paras. 18, 19 & 20) alleges that the fraud scheme began in September 2009, but it then alleges that Tianwei's "installation" of Messrs. Zhang, Liu, Xia and Paul as Hoku company executives occurred in 2010. The allegations describe ongoing contract negotiations in which Mr. Paul (and other defendants) sought to end the existing escrow payment method the parties were using. The Amended Complaint alleges that the escrow process finally ended on June 9, 2011.

Without referencing a single fact, Plaintiff theorizes that when the individual defendants entered into contract negotiations with it to arrive at new terms that, no matter what those terms would turn out to be, the individual defendants, acting in capacities for publically traded companies, never intended for the companies to fulfill the payment terms. Surely, Plaintiff is required to provide a factual basis for such a scheme ("smoking gun" memo, email, letter, voice mail, etc.). Plaintiff alleges that Mr. Paul possessed and acted on this nefarious intent for more

---

[8] Response to Defendant Scott Paul's Motion to Dismiss Amended Complaint (Doc. 47, pg. 9).

than two years, "while Tianwei used the funds owing and designated for payment to JH Kelly for other, improper purposes..." In fact, as of September 30, 2011, the Hoku companies had paid to Plaintiff on one contract the aggregate amount of $225.5 million.[9]

No facts support the allegation that Tianwei used funds designated for payment to JH Kelly to any "improper" purpose or that Scott Paul did or could possibly have known that if it had. Plaintiff invented this fraud scheme, which does not flow even by inference from a single factual allegation, including market conditions existing at any point in time. Plaintiff's alleged fraud scheme is neither plausible on its face nor sufficient to meet stringent pleading requirements. It is flatly contradicted by the full contents of the Form 10-Q upon which Plaintiff mistakenly and only selectively relies.

Wire fraud as a RICO predicate offense requires allegations that wire was used to further the scheme. *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2008). The notion that Scott Paul's emails sent in November 2011 informing Plaintiff of a lack of funds and banking complexities but reiterating Tianwei's assurances of financing to completion furthered a fraud scheme begun two over years earlier is a paranoid delusion wholly devoid of evidentiary support from start to bankruptcy.

Mr. Paul respectfully disagrees with Plaintiff that the district courts have been misapplying the Supreme Court's holdings regarding the requisite pleading of parties and entities that comprise an actionable RICO enterprise. The Amended Complaint fails to sufficiently allege the existence of a RICO enterprise or the element of continuity for all of the reasons stated earlier in all of the parties' briefs and argument, including Mr. Paul's.

---

[9] Form 10-Q of Hoku Corporation for the Quarter ending September 30, 2011, Ex. A to Pirtle Declaration (Doc. 19-2, Exhibit pg. 26).

**REPLY MEMORANDUM IN SUPPORT OF SCOTT PAUL'S MOTION TO DISMISS AMENDED COMPLAINT—8**

C.  Elusive Causation

Plaintiff makes light of Mr. Paul's argument that it insufficiently alleged causation. Plaintiff seeks to impose liability on Mr. Paul under RICO for treble damages for a total minimum recovery of $75 million. The pleading requirements governing this case require Plaintiff to allege all of the elements of its RICO claims with specificity. Causation is an element of the fraud and RICO counts. Lack of it would rob Plaintiff of standing to maintain its federal RICO claim in this court. *Luhan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Plaintiff's refusal to allege with specificity and particularity what it lost in reliance on Mr. Paul's emails compels dismissal of its fraud and RICO counts against him, especially in light of the statements highlighted on pages 4 and 5 of Plaintiff's Response. Like CEO Paul, Plaintiff relied on Tianwei's representations of construction funding, not Mr. Paul's.

D.  Negligence

Plaintiff argues that its claim is not for negligent misrepresentation. The special relationship cases address the duty element of a negligence claim. If a duty of care exists, then in this matter the allegations can only be construed as a claim that defendants breached their respective duties of care to Plaintiff to NOT make negligent misrepresentations.

The court should decline Plaintiff's invitation to expand the rare instances where courts have recognized a duty of care based on special relationships and thereby allowed actions under negligence theories for purely economic harm. This is another instance where the Hoku bankruptcies should cut off Plaintiff's road to recovery in this court. Hoku Corporation, not Mr. Paul, individually, formed relationships in Idaho. Plaintiff alleges that Mr. Paul was a

"spokesperson" for Tianwei and/or that communications from Hoku companies originated with Tianwei.[10]

Plaintiff cites no case that has gone so far as to impose a duty of care on an individual former executive of an entity that allegedly formed special relationships as exceptions to the rule against recognizing negligence actions for purely economic harm. Doing so here would subject company executives to liability for the debts of publically held entities that go bankrupt based on a negligence theory that the Idaho legislature has not created and to an extent the courts have not even contemplated.

## CONCLUSION

Based on the foregoing arguments and authorities, the record in this matter and the arguments of co-defendants, Mr. Paul respectfully submits that Plaintiff's Amended Complaint against him should be dismissed with prejudice.

DATED THIS 3rd day of July, 2014.

**MCDEVITT & MILLER LLP**

By: /s/ Celeste K. Miller
Celeste K. Miller
Attorneys for Defendant Scott Paul

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ Howard Holderness
Howard Holderness
Attorneys for Defendant Scott Paul

---

[10] Complaint (Doc 1, paras. 16, 22); Amended Complaint (Doc. 35, para. 22).

**REPLY MEMORANDUM IN SUPPORT OF SCOTT PAUL'S MOTION TO DISMISS AMENDED COMPLAINT—10**

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of July, 2014, I filed the foregoing document electronically through the CM/ECF System, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Craig R. Yabui,** cry@elamburke.com

**Joseph N. Pirtle,** jnp@elamburke.com

**William G. Dryden,** wgd@elamburke.com

**Howard Holderness,** hholderness@morganlewis.com; cgreenblatt@morganlewis.com

**Jack S. Gjording,** jgjording@gfidaholaw.com, cfouser@gfidaholaw.com, jhall@gfidaholaw.com, jsmith@gfidaholaw.com, ktonkin@gfidaholaw.com, lloyd@gfidaholaw.com

**Kelly Alfred Cameron,** kcameron@perkinscoie.com, docketboi@perkinscoie.com, shellylee@perkinscoie.com

**Michael O Roe,** mor@moffatt.com, ccb@moffatt.com, ecf@moffatt.com, mjm@moffatt.com, moffattthomas@hotmail.com, tmh@moffatt.com

**Stephen C. Hardesty,** shardesty@perkinscoie.com, lstacy@perkinscoie.com

        **MCDEVITT & MILLER LLP**

        By: /s/ Celeste K. Miller
        Celeste K. Miller
        Attorneys for Defendant Scott Paul