UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JH KELLY, LLC, a Washington limited liability company,<br><br>               Plaintiff,<br>  v.<br><br>TIANWEI NEW ENERGY HOLDINGS CO., LTD., a People's Republic of China company, TAO (MIKE) ZHANG, WEI XIA, SCOTT PAUL, DAUI (SEAN) LIU, AND DOES 1-10,<br><br>               Defendants. | Case No. 1:13-cv-00368-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Beginning in 2007, Plaintiff JH Kelly, LLC was the general contractor in charge of building a manufacturing plant for a Chinese corporation. Construction ceased in 2012 when funding for the plant dried up. At that time, JH Kelly was owed approximately $25 million for work it had done on the plant. JH Kelly sued Tianwei New Energy Holdings Co., Ltd., a surety for the Chinese corporation, and several of the corporation's officers and directors, defendants Tao Zhang, Wei Xia, Scott Paul, and Daui Liu, to recover the outstanding debt.

Central to JH Kelly's complaint are allegations that Defendants knowingly misrepresented that Tianwei would fund the project through to completion. By making those misrepresentations, Defendants allegedly committed fraud, violated state and federal racketeering law, and, in the alternative, negligently misled JH Kelly into believing it would be paid for its work. Because JH Kelly has not alleged facts that show that Tianwei's stated commitment to the project was false, the Court will dismiss JH Kelly's fraud and racketeering claims. JH Kelly's negligence claim fails because it is not cognizable under Idaho law.

## BACKGROUND

Hoku Corporation and its subsidiary, Hoku Material, Inc., (collectively "Hoku") are Chinese corporations focused on developing clean energy projects. As part of its solar initiative, Hoku decided to construct a polysilicon manufacturing plant in Pocatello, Idaho. Hoku hired Plaintiff JH Kelly as general contractor to build the plant, and construction commenced on August 8, 2007.

In early 2008, Tianwei committed to purchase Hoku's polysilicon for ten years. The total purchase price was $468 million, and Tianwei paid $79 million upfront. By fall of 2008, however, the market for polysilicon crashed. Shortly after the crash, Tianwei and Hoku entered into a financing arrangement whereby Tianwei became the majority shareholder and "funding arm of Hoku." *Amend. Compl.*, Dkt. 35, ¶19. As such, Tianwei exercised a significant degree of control over Hoku and the construction of the

plant. Tianwei installed Zhang, Liu, Xia, and Paul, all of whom had ties to Tianwei, as directors and officers for Hoku. *See id.* ¶¶20-21.

By July 2010, Hoku had fallen behind in paying JH Kelly for its work building the plant. When JH Kelly raised concerns about the late payments with Defendants, they assured JH Kelly that they "w[ould] ensure sufficient funds [were] in place till completion of the project." *Id.* ¶26. A pattern of similar occurrences repeated for about one year. Each time payments fell behind, Defendants reiterated Tianwei's financial strength and full commitment to the project. *See id.* ¶¶27, 33, 35.

In October 2011, Hoku stopped making payments to JH Kelly. *See id.* ¶50. In the months that followed, Defendants repeatedly assured JH Kelly that "Tianwei . . . had in place all required financing for completion of the [p]roject, and that it was strictly a matter of 'when, not if'" the funds would be sent. *Id.* ¶35; *see also id.* ¶39 ("Hoku/Tianwei [was] not a credit risk."); *id.* ¶42 ("Tianwei 'will ensure that sufficient funds are in place till completion of the project.'"). Defendants blamed the delay on various procedural hurdles, such as difficulty transferring funds from China to the United States. By the end of 2011, however, Hoku owed JH Kelly approximately $25 million. As a result, JH Kelly permanently stopped work on the plant on March 30, 2012.

JH Kelly filed its original complaint alleging common law fraud and violations of Idaho's Racketeering Act, I.C. §§ 18-7801 – 18-7805, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 – 1968. On Defendants' motion, the Court dismissed the original complaint with leave to amend. Dkt. 34. JH

Kelly had "not sufficiently alleged that [D]efendants' representations that Hoku or Tianwei intended to pay [JH Kelly] for its work on the project were false, much less that at the time they allegedly made these representations[, D]efendants knew they were false." *Id.* at 8. Absent fraud, JH Kelly's state and federal racketeering claims failed as well. *Id.* at 9.

Subsequently, JH Kelly filed an amended complaint, again alleging fraud and state and federal racketeering claims. JH Kelly added a claim for negligence based upon "Defendants' omissions and/or misrepresentations" over the amount of financing in place for the project. *Amend. Compl.*, Dkt. 35, ¶74. Defendants have moved to dismiss JH Kelly's amended complaint for, among other things, failure to state a claim.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id.* Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## DISCUSSION

1. *Common Law Fraud*

In addition to Rule 8, JH Kelly's fraud claim is governed by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires JH Kelly to "state with particularity the circumstances constituting fraud." *Fed. R. Civ. P.* 9(b). To satisfy the particularity requirement, JH Kelly "must set forth more than the neutral facts necessary to identify the transaction." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (internal quotation mark omitted). Examples of "neutral facts" are the "time, place, and content of the alleged

misrepresentation." *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir.2011). Instead, "[t]he plaintiff must set forth what is false or misleading about a statement, and *why it is false*." *Id.* (emphasis added).

Alleging why a statement is false is a contextual task. Fraud protects against false statements of past or existing fact. *Gillespie v. Mountain Park Estates, LLC*, 132 P.3d 428, 431 (Idaho 2006). As a result, "a promise to do something in the future, which is subsequently broken, does not constitute a misrepresentation of existing fact unless at the time of making the promise the promisor had no intention of performing the promise." *Weatherhead v. Griffin*, 851 P.2d 993, 998 (Idaho Ct. App. 1992). Put another way, the fact that a defendant takes a position that is inconsistent with its earlier statement does not necessarily mean that the earlier statement was false when it was made. *See GlenFed*, 42 F.3d at 1549. "In order to allege the circumstances constituting fraud, plaintiff must set forth facts explaining why the difference between the earlier and the later statements is not merely the difference between two permissible judgments, but rather the result of a falsehood." *Id.* Thus, the Court dismissed JH Kelly's original complaint because the fact that "Tianwei . . . reneged on its promise to finance the construction of the [p]roject or to pay the debts owed to plaintiff is insufficient to allege that defendants representations [to the contrary] were false at the time they were made." *March 17, 2014 Mem. & Order*, Dkt. 34, at 8. Although JH Kelly has fleshed out the circumstances surrounding Defendants' allegedly fraudulent statements in the amended

complaint, it has still failed to explain why Defendants' statements were false when made or that they knew the statements were false when made.

Plaintiff's amended complaint rests largely on two facts. First, JH Kelly stopped receiving payment for its work in October 2011. *Amend. Compl.*, Dkt. 35, ¶50. Second, shortly after that time, in November 2011, Hoku's internal books showed that it owed approximately $40 million and had less than $1 million in cash on hand.[1] *Id.* Viewed in isolation, these facts seem persuasive. However, they lose their force when they are placed in context. As Defendants argue, these facts say nothing about Tianwei's financial strength or its commitment to the project.

Instead of factual support, JH Kelly offers only the conclusory allegations that (1) "Tianwei did not have in place committed financing sufficient to complete the Project" and (2) "there were no agreements in place with financiers, including Tianwei, demonstrating the existence of any committed financing sufficient to complete the Project." *Id.* "[M]ere conclusory allegations of fraud are insufficient" to survive a motion to dismiss. *GlenFed*, 42 F.3d at 1548 (quoting *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989)).

---

[1] This fact, even viewed in isolation, is not as ominous as JH Kelly suggests. According to JH Kelly's description of Hoku's books, Hoku was regularly paying down its outstanding debt. *See Amend. Compl.*, Dkt. 35, ¶41 ("Hoku Corporation had accounts payable of $40,371,253.64, of which $18,781,093.94 was owing thirty (30) days or less, $17,639,511.38 was owing thirty-one (31) to sixty (60) days, $2,667,768.91 was owing sixty-one (61) to ninety (90) days, and $1,282,879.41 was owing over ninety (90) days.").

Moreover, the amended complaint and Hoku's SEC Filings[2] contradict JH Kelly's theory that Tianwei's support was entirely illusory. In addition to its original $79 million investment, Tianwei provided $50 million in debt financing to Hoku as part of the deal that made it the majority shareholder of Hoku. *Amend. Compl.*, Dkt. 35, ¶17. As of December 31, 2011, JH Kelly alleges that Hoku had raised $365.5 million in debt financing from Chinese banks, $314.7 million of which was secured by letters of credit from Tianwei. *Id.* ¶45; *Hoku's Form 10-Q*, Dkt. 19-4, at 44. Nor was this support simply retrospective. Tianwei had "committed to provide [Hoku with] financial support . . . until at least April 1, 2012." *Hoku's Form 10-Q*, Dkt. 19-4, at 44. This support never fully materialized to benefit JH Kelly, but that fact does not establish fraud on the part of the Defendants. Just as before, JH Kelly cannot allege "'fraud by hindsight.'" *GlenFed*, 42 F.3d at 1549 n.8 (quoting *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978)).

JH Kelly argues that "Defendants . . . expressly admit[ted] that they had never possessed the necessary financing." *Amend. Compl.*, Dkt. 35, ¶47. This admission, according to JH Kelly, came in the form of an email from Hoku's project manager, sent on March 19, 2012, in which he asked for "patience as [Hoku] continue[d] to work toward securing the funds needed to pay each contractor the full amount due for work completed." *Id.* The project manager's email is not an admission by Defendants that their prior reassurances of Tianwei's commitment were false. The email does not discuss

---

[2] Once again, Plaintiff specifically directed the Court's attention to Hoku's SEC filings. As the Court has previously explained, Hoku's public SEC filings are properly considered at this stage in the proceedings. *In re Atlas Mining Co. Sec. Litig.*, 670 F. Supp. 2d 1128, 1139 (D. Idaho 2009) (citing *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006)).

Hoku's or Tianwei's earlier financials, and it was not written by any of the Defendants. At best, the email is circumstantial evidence of fraud. *See Fecht v. Price Co.*, 70 F.3d 1078, 1083-84 (9th Cir. 1995). Such statements may "*bolster* a complaint," but "*without more* [they do not] satisfy the requirements of Rule 9(b)." *Yourish*, 191 F.3d at 997; *id.* ("Mere 'temporal proximity between positive statements stressing a firm's strengths and announcements of poor economic performance,' without more, 'do[es] not create an inference that the earlier statements were fraudulent.'") (quoting *Arazie v. Mullane*, 2 F.3d 1456, 1467-68 (9th Cir. 1993)).

2. *Racketeering Claims*

To establish civil liability under RICO, JH Kelly must allege facts that show Defendants violated a provision of 18 U.S.C. § 1962. 18 U.S.C. § 1964(c); *Turner, M.D., v. Cook*, 362 F.3d 1219, 1228 (9th Cir. 2004). The relevant provision here is § 1962(c), which prohibits the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). As before, "[b]ecause [JH Kelly's] complaint, as a matter of law, does not allege actionable fraud under the common law," it has failed to establish that Defendants engaged in racketeering activity. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 618 (9th Cir. 2004); *Mem. & Order*, Dkt. 34, at 8-9.

3. *Negligence/Negligent Misrepresentation*

In the amended complaint, JH Kelly added a claim titled "negligence." Under this claim, JH Kelly alleges that Defendants had a duty to use due care in their dealings with

JH Kelly. "Defendants' [alleged] omissions and/or misrepresentations to JH Kelly regarding the lack of financing in place for the [p]roject constituted a breach of the standard of care owed to JH Kelly." *Id.* ¶74. Defendants Zhang and Liu argue that this claim is properly construed as a claim for negligent misrepresentation and should be dismissed because Idaho only recognizes the tort of negligent misrepresentation in very limited circumstances that are not found here. All the Defendants argue that JH Kelly's negligence claim is barred by the economic loss doctrine. The Court agrees with both arguments.

In *Duffin v. Idaho Crop Improvement Ass'n*, the Idaho Supreme Court "expressly h[e]ld that, except in the narrow confines of a professional relationship involving an accountant, the tort of negligent misrepresentation is not recognized in Idaho." 895 P.2d 1195, 1203 (Idaho 1995). This case does not involve a professional accounting relationship. Therefore, Defendants cannot be liable for negligently misrepresenting Tianwei's financial strength or commitment.

JH Kelly concedes that the amended complaint does not state a viable claim of negligent misrepresentation. Plaintiff argues, however, that its claim is one for simple negligence and not negligent misrepresentation. JH Kelly cannot avoid dismissal by untethering the title of its claim from the substantive allegations supporting it. Rule 8(a) requires a "short plain statement of the claim" in order to give the opposing party notice of the claim. *Fed. R. Civ. P.* 8(a); *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001). The entire thrust of JH Kelly's complaint is that Defendants' representations about the

level of funding available induced JH Kelly to continue to construct the plant. JH Kelly's "negligence" claim expressly states as much. *Amend. Compl.*, Dkt. 35, ¶73 ("Defendants knowingly induced JH Kelly to rely on them in the performance of those specialized functions by making the *representations* referred to above.") (emphasis added); *id.* ¶74 ("Defendants' *omissions* and/or *misrepresentations* to JH Kelly regarding the lack of financing . . . constituted a breach of the standard of care.") (emphasis added). Mere "labels and conclusions" to the contrary cannot transform the substance of JH Kelly's claim. *Twombly*, 550 U.S. at 555.

Assuming for the sake of argument that JH Kelly pleaded a simple negligence claim, the claim is barred by the economic loss doctrine. "Negligence and breach of contract are 'two distinct theories of recovery.'" *Aarmeda v. U.S. Dairy Sys., Inc.*, 215 P.3d 505, 510 (Idaho 2009) (quoting *Just's, Inc. v. Arrington Constr. Co., Inc.*, 583 P.2d 997, 1003 (Idaho 1978)). The economic loss doctrine serves in part to protect the dividing line between these two distinct areas of law. *See Restatement (Third) of Torts: Liability for Economic Harm* § 3, cmt. b (2014 Draft); *accord Tuch Enter. v. Coffin*, 740 P.2d 1022, 1026 (Idaho 1987) ("We do not believe that any good purpose would be achieved by undermining the operation of the UCC provisions [and other contract principles] by extending tort law to embrace purely economic losses in product liability cases.") (internal quotation mark omitted). Generally, the rule holds that "a plaintiff may not recover in tort where the sole allegation is that the defendant prevented the plaintiff from gaining a purely economic advantage." *Aardema*, 215 P.3d at 510. Given that it is

trying to recover payments owed under the contract with Hoku, JH Kelly admits that the economic loss doctrine applies to this case.

However, JH Kelly argues that the economic loss doctrine does not bar to its claim because it was in a "special relationship" with Defendants. The special relationship exception to the general rule of non-recovery applies to "an extremely limited group of cases" "where the relationship between the parties is such that it would be equitable to impose" a duty on a defendant to protect against another's economic interest. *Duffin*, 895 P.2d at 1201. The Idaho Supreme Court has found the existences of a special relationship in two situations. "One situation is where a professional or quasi-professional performs personal services." *Blahd v. Richard B. Smith, Inc.*, 108 P.3d 996, 1001 (Idaho 2005). "The other situation involving a special relationship is where an entity holds itself out to the public as having expertise regarding a specialized function, and by so doing, knowingly induces reliance on its performance of that function." *Id.* In *Duffin*, for example, the Idaho Supreme Court held that "the only entity which [could] certify seed potatoes in the state of Idaho" preformed a specialized function, and that entity "occupie[d] a special relationship with those whose reliance it [had] knowingly induced." 895 P.2d at 1201. Another example of a specialized function comes from *Glanzer v. Shepard*, in which the New York Court of Appeals held that public weighers had a duty to perform their jobs carefully because purchasers of beans relied on the weighers' measurements to set the price of the beans. 135 N.E. 275, 277 (N.Y. 1922).

JH Kelly argues that Defendants engaged in two comparable specialized functions – (1) "expertise in developing specialized manufacturing facilities for solar energy products, including polysilicon," and (2) expertise in financing such projects through Chinese lenders. *Amend. Compl.*, Dkt. 75, ¶72. The Court does not agree. All Plaintiff alleges is that Defendants agreed to pay for a manufacturing plant. That the plant was large, meant for a technical purpose, and costly to construct does not suggest the relationship between the parties was anything more than a buyer-seller relationship. The allegations in the complaint do not justify imposing a duty of care on Defendants to protect JH Kelly's economic interest in the contract with Hoku. *See Mountain View Hosp., LLC v. Sahara, Inc.*, No. 4:07-cv-464-BLW, 2011 WL 4962183, at *15 (D. Idaho 2011) (holding that general contractor hired to build medical facilities did not perform a specialized function).

## CONCLUSION

By failing to explain why Tianwei's financial commitment to the project was false, the amended complaint fails to satisfy the requirements of Rule 9(b). For the same reason, JH Kelly's racketeering claims fail as well. JH Kelly's "negligence" claim is properly construed as a claim for negligent misrepresentation, and that tort is not cognizable on these facts. Alternatively, the negligence claim is barred by the economic loss doctrine. For these reasons, and because JH Kelly does not request leave to amend, the Court will dismiss JH Kelly's amended complaint with prejudice.

# ORDER

**IT IS ORDERED THAT:**

1. Defendant Scott Paul's motion to dismiss (Dkt. 39) is **GRANTED.**

2. Defendants Lui and Zhang's motion to dismiss (Dkt. 41) is **GRANTED.**

3. Defendant Xia's motion to dismiss (Dkt. 42) is **GRANTED.**

4. Defendant Tianwei New Energy Holdings Co., Ltd.'s motion to dismiss (Dkt. 43) is **GRANTED**.

5. Plaintiff JH Kelly's amended complaint (Dkt. 35) is hereby **DISMISSED WITH PREJUDICE**.

6. Judgment will be entered separately in accordance with Federal Rule of Civil Procedure 58.

DATED: November 10, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court